CASE NO.  20-2078

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| DONNA EVERHART and | ) |
| HARLEY EVERHART, individually | ) |
| and as next of friend for S.E. BOY and | ) |
| S.E. GIRL, minor children, | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF NEW MEXICO; | ) |
| CHILDREN, YOUTH AND | ) |
| FAMILIES DEPARTMENT; | ) |
| DANA BECKER, Employee and | ) |
| Supervisor for Children, Youth and | ) |
| Families Department, in her | ) |
| official and individual capacity; | ) |
| and EVGENIA VALDERAZ, | ) |
| in her official and individual | ) |
| capacity, | ) |
| | ) |
| Defendant-Appellee. | ) |

On Appeal from the United States District Court
For the District of New Mexico
The Honorable Robert C. Brack
District Court No. 2:17-cv-01134-RCB-CEG

**APPELLEES' RESPONSE BRIEF**

Respectfully submitted,

BRYAN EVANS

Atwood, Malone, Turner & Sabin, P.A.
P.O. Drawer 700
Roswell, NM 88202-0700
(575) 622-6221
Fax: (575) 624-2883

Oral Argument is not requested.

May 6, 2021

# TABLE OF CONTENTS

Page

TABLE OF CASES AND AUTHORITIES ............................................................ iii

STATEMENT OF PRIOR AND RELATED APPEALS ........................................1

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................2

STATEMENT OF THE CASE AND RELEVANT FACTS ...................................2

      A. State Court Procedural History Between 2010-2017 ...........................3

      B. New Mexico State District Court's 2018 Decision on Remand from
         Court of Appeals ...............................................................................6

      C. New Mexico Court of Appeals December 27, 2019 Decision............13

      D. Plaintiff's Petition for certiorari to New Mexico Supreme Court.......14

      E. Federal Court Litigation .................................................................15

SUMMARY OF ARGUMENTS..........................................................................16

ARGUMENT AND AUTHORITIES...................................................................17

I.    THE DISTRICT COURT CORRECTLY DENIED PLAINTIFFS'
      MOTION FOR ISSUE PRECLUSION ...................................................17

      A. Plaintiffs failed to show that the parties adversely affected by the
         proposed issue preclusion were parties to the prior litigation.............19

      B. Plaintiffs failed to properly support their Motion for Issue Preclusion
         ..........................................................................................................20

C. Public Policy dictates that offensive collateral estoppel is not appropriate in this case .......................................................................21

II.   THE DISTRICT COURT CORRECTLY DECIDED THAT DEFENDANTS BECKER AND VALDERAZ WERE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' RIGHT TO FAMILIAL ASSOCIATION CLAIM.............................................................................................................22

A. Plaintiffs did not carry their burden to show that Defendants violated their Constitutional Right to Familial Association ...........................23

B. Plaintiffs did not carry their burden to show that the ........................26

III.   THE DISTRICT COURT CORRECTLY DECIDED THAT DEFENDANTS BECKER AND VALDERAZ WERE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS

.................................................................................................28

CONCLUSION ................................................................................................30

Certificate of Compliance.............................................................32

CERTIFICATE OF DIGITAL SUBMISSION ......................................................33

CERTIFICATE OF SERVICE .............................................................................34

ATTACHMENTS:
   *Exhibit 1: Proposed Findings and Recommended Disposition*
   *Exhibit 2: Order Adopting Chief Magistrate Judge's PFRD*

# TABLE OF CASES AND AUTHORITIES

## CASES

### Decisions of the Supreme Court of the United States

*Anderson v. Creighton,*
   483 U.S. 635 (1987)..................................................................................26, 27

*Daniels v. Williams,*
   474 U.S. 327 (1986)..........................................................................................29

*District of Columbia v. Wesby,*
   138 S. Ct. 577 (2018)........................................................................................26

*Lance v. Dennis,*
   546 U.S. 459 (2006)..........................................................................................17

*Mathews v. Eldridge,*
   424 U.S. 319 (1976)..........................................................................................29

*Parklane Hosiery Co. v. Shore,*
   439 U.S. 322 (1979)..........................................................................................17

*Parratt v. Taylor,*
   451 U.S. 527 (1981)..........................................................................................26

*Pearson v. Callahan,*
   555 U.S. 223 (2009)..........................................................................................23

*Santosky v. Kramer,*
   455 U.S. 745 (1982)..........................................................................................28

*Troxel v. Granville,*
   530 U.S. 57 (2000)............................................................................................28

*United States v. Mendoza,*
   464 U.S. 154 (1984)..........................................................................................21

*White v. Pauly*
    137 S. Ct. 548 (2017)........................................................................27


<u>Decisions of the United States Court of Appeals for the Tenth Circuit</u>

*A.M. v. Holmes,*
    830 F.3d 1123 (10th Cir. 2016) ......................................................23

*Brown v. Montoya,*
    66o2 F.3d 1152 (10th Cir. 2011) ....................................................29

*Bruner v. Baker,*
    506 F.3d 1021 (10th Cir. 2007) ......................................................26

*Casey v. W. Las Vegas Indep. Sch. Dist.,*
    473 F.3d 1323 (10th Cir. 2007) ......................................................28

*Dodge v. Cotter Corp.,*
    203 F.3d 1190 (10th Cir. 2000) ......................................................22

*Gates v. Unified Sch. Dist. No. 449,*
    996 F.2d 1035 (10th Cir. 1993) ......................................................25

*Gomez v. Wood*
    451 F.3d 1122 (10th Cir. 2006) ......................................................28

*Griffin v. Strong,*
    983 F.2d 1544 (10th Cir. 1993) ................................................23, 27

*Halley v. Huckaby,*
    901 F.3d 1136 (10th Cir. 2018) ..............................22, 23, 24, 25, 27

*In re Magic Circle Energy Corp.,*
    889 F.2d 950 (10th Cir. 1989) ......................................................1, 2

*Issa v. Comp USA,*
    354 F.3d 1174 (10th Cir. 2003) ......................................................20

*Malik v. Arapahoe Cnty. Dep't of Soc. Servs.,*
    191 F.3d 1306 (10th Cir. 1999) ....................................................................27

*PJ ex rel. Jensen v. Wagner,*
    603 F.3d 1182 (10th Cir. 2010) .............................................................23, 29

*Redmond v. Crowther,*
    882 F.3d 927 (10th Cir. 2018) ....................................................................27

*Spielman v. Hildebrand,*
    873 F.2d 1377 (10th Cir. 1989) ..................................................................29

*Stanley v. Gallegos,*
    852 F.3d 1210 (10th Cir. 2017) ..................................................................22

*Thomas v. Kaven,*
    765 F.3d 1183 (10th Cir. 2014) .............................................23, 24, 25, 28

*Walton v. Gomez (Estate of Booker),*
    745 F.3d 405 (10th Cir. 2014) ....................................................................23


### Decisions of the New Mexico Supreme Court

*Bogle Farms, Inc. v. Baca,*
    1996-NMSC-051, 925 P.2d 1184 ................................................................21

*DeFlon v. Sawyers,*
    2006-NMSC-025, 137 P.3d 577 ................................................................18

*Ideal v. Burlington Res. Oil & Gas Co. LP,*
    2010-NMSC-022, 233 P.3d 362 ...........................................................18, 19

In the Matter of the Adoption of J.J.B.,
    1995-NMSC-026, 894 P.2d 994 ........................................................11, 12, 25

Potter v. Pierce,
    2015-NMSC-002, 233 P.3d 362 ...........................................................17, 18

*Silva v. State,*
      1987-NMSC-107, 106 N.M. 472, 745 P.2d 380 ...........................................20

*Shovelin v. Cent. N.M. Elec. Coop., Inc.,*
      1993-NMSC-015, 850 P.2d 996 ....................................................................18


### Decisions of the New Mexico Court of Appeals

Reeves v. Wimberly,
      1988-NMCA-038, 755 P.2d 75 ......................................................................19

State ex rel. Children, Youth & Families Dep't v. Donna E. (Donna E.I),
      2017 N.M. App. LEXIS 42, (N.M. Ct. app. June 8 2017)
      .................................................................................................3, 4, 5, 6

State ex rel. Children, Youth & Families Dep't v. Donna E. (Donna E.II),
      No. A-1-CA-37727, 2019 N.M. App. Unpub. LEXIS 518
      (N.M. Ct. App. Dec. 27, 2019)
      ................................................................... 7, 8, 9, 10, 13, 14, 16, 25

State ex rel. Children, Youth & Families Dep't v. Lance K.,
      2009-NMCA-054, 809 P.3d 778 ....................................................................12


### Decisions of Other Jurisdictions

Karim-Panahi v. Los Angeles Police Dep't,
      839 F.2d 621 (9th Cir. 1988) ........................................................................21

## STATUTES

28 U.S.C. § 158(d) ..............................................................................................1

28 U.S.C. §1291 ..................................................................................................1

28 U.S.C. § 1331 .................................................................................................1

42 U.S.C. § 1983.......................................................................................1, 22, 26

## FEDERAL RULES

Fed. R. Civ P. 56 ...................................................................................20

## SECONDARY SOURCES

18 Moore's Federal Practice – Civil § 132.05 (2019) ..............................20

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals in this matter on behalf of Defendants.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This action was initiated in the United States District Court for the District of New Mexico on November 13, 2017. The original Complaint, and each of the amended Complaints, asserted causes of action for violations of Constitutional rights pursuant to 42 U.S.C. § 1983. Accordingly, they arose under federal law, bestowing subject matter jurisdiction on the District Court for the District of New Mexico pursuant to 28 U.S.C. §1331.

On October 8, 2019, Plaintiff filed a "Motion for Issue Preclusion," alleging the issues in the case had already been decided by the state district court. On January 21, 2020, Defendants moved for summary judgment asserting, among other things, entitlement to qualified immunity.  The district court referred both motions to Chief Magistrate Judge Garza for report and recommendation.  Chief Magistrate Judge Garza recommended that Plaintiffs' Motion for Issue Preclusion be denied, and that Defendants' Motion for Summary Judgment be granted.  The district court adopted that recommendation over Plaintiffs' objection. This appeal timely followed.

This Court has jurisdiction over Plaintiffs' appeal of the district court's order granting Defendants' Motion for Summary Judgment under 28 U.S.C. §1291, which confers appellate jurisdiction over final decisions of district courts.  This Court does not have jurisdiction over Plaintiffs' appeal of the district court's order denying their Motion

for Issue Preclusion. Pursuant to 28 U.S.C. § 158(d), this Court can only assume jurisdiction over final orders entered by the district court. *In re Magic Circle Energy Corp.*, 889 F.2d 950, 953 (10th Cir. 1989). To be "final and appealable, the district court's order must end the litigation and leave nothing to be done except execute the judgment." *Id*. The district court's decision denying Plaintiffs' Motion for Issue Preclusion would not have ended the litigation. The only decision that ended the litigation was the district court's ruling granting Defendants' Motion for Summary Judgment. Accordingly, the district court's ruling on Plaintiffs' Motion for Issue Preclusion was not a final appealable order.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

IF THIS COURT HAS JURISICION TO CONSIDER THE DISTRICT COURT'S RULING ON PLAINTIFFS' MOTION FOR ISSUE PRECLUSION, THE COURT MUST CONSIDER WHETHER THE DISTRICT COURT CORRECTLY DENIED THE MOTION ON THE BASIS THAT PLAINTIFFS FAILED TO DEMONSTRATE THAT THE AFFECTED PARTIES WERE THE SAME IN BOTH THE STATE AND FEDERAL LITIGATION.

WHETHER DEFENDANTS BECKER AND VALDERAZ WERE ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFFS FAILED TO SHOW THEY VIOLATED PLAINTIFFS' RIGHTS TO FAMILIAL ASSOCIATION AND BECAUSE PLAINTIFFS FAILED TO DEMONSTRATE THE EXISTENCE OF CLEARLY ESTABLISHED LAW SHOWING THEIR ACTIONS VIOLATED PLAINTIFFS' RIGHTS AT THE TIME OF THE ALLEGED VIOLATION.

WHETHER DEFENDANTS BECKER AND VALDERAZ WERE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS BECAUSE PLAINTIFFS FAILED TO SHOW A CONSITUTIONAL VIOLATION.

## STATEMENT OF THE CASE AND RELEVANT FACTS

In April of 2010, first-grader, S.E. Boy, reported to his father and his school principal that his seventeen-year-old brother, Harley Jr., had raped him. While his father

chalked up the allegation to a dispute over an iPod between the two boys, the school took it seriously and called in the authorities. Children, Youth, and Families Department ("CYFD") took custody of both S.E. Boy and his sister, S.E. Girl, and thus began ten years of litigation spanning the state and federal courts. Eventually Plaintiffs' parental rights to S.E. Girl were terminated and both children remain in CYFD custody.  Plaintiffs sued CYFD and two CYFD employees, alleging that they violated their Constitutional rights to familial association, procedural due process and freedom from unlawful search and seizure. Plaintiffs sought compensatory damages, punitive damages and attorneys' fees. (ROA, Vol. I, pg.128).

### A.    State Court Procedural History Between 2010-2017

CYFD removed S.E. Girl and S.E. Boy from their parents' home in June of 2010. *Second Amended Complaint, ¶5* (ROA, Vol. I, pg.129). The State of New Mexico filed an abuse and neglect Petition on June 15, 2010 against Plaintiffs, alleging they failed to supervise and protect their minor children.  *Second Amended Complaint, ¶12* (ROA, Vol. I, pg.130). Plaintiffs admitted the allegations contained in the Petition and pled no contest to the Petition. *Second Amended Complaint, ¶13* (ROA, Vol. I, pg.130).

As part of their pleas, Plaintiffs agreed to comply with a proposed disposition and treatment plan submitted by CYFD.  *State ex rel. Children, Youth & Families Dep't v. Donna E. (Donna E. I),* 2017 N.M. App. LEXIS 42, at *7 (Ct. App. June 8, 2017). Thus began, the state district court's judicial review of the case.  In September, October and November 2010 and January 2011, the court's orders either found that Plaintiffs did not

3

make sufficient efforts to comply with their treatment plan or that they had not made significant progress. *Id.* at *7-8.

The court held its initial permanency hearing in February 2011. The court found that Respondents had made sufficient efforts to comply with the treatment plan but neither had made progress toward alleviating or mitigating the causes necessitating removal of the children. The court ordered a permanency plan of reunification but ordered that the children were not to transition home until Plaintiffs had made sufficient progress and the court had reviewed the transition plan. *Id.* at *8.

Over the next three months, the district court continued to find that Plaintiffs were not making sufficient progress. *Id.* Finally, by June 2011, the court found Plaintiffs were making sufficient efforts to comply with the treatment plan and S.E. Girl was transitioning home while S.E. Boy was in a residential treatment facility because he needed more in-depth treatment. *Id.* at *8-9. At a permanency hearing on July 19, 2011, the district court learned that some of the images on the family computer were possibly child pornography and ceased the children's contact with Plaintiffs. *Id.* at *9.

In August of 2011, at a permanency review hearing, the court found that Plaintiffs continued to be unaware of their responsibility for the reason children came into custody and ruled there should be no contact with Plaintiffs. The court further changed the permanency plan from reunification to adoption. *Donna E. I*, 2017 N.M. App. LEXIS 42, at *10. CYFD filed a petition to terminate parental rights on September 27, 2011. *Id.* The Court scheduled the termination hearing for July 23, 2012. *Id.* at *11. The termination hearing was twice rescheduled because a key witness was unavailable. *Id*. at *15-16.

4

The parties took no action between September 2012 and February 2013. In February 2013, CYFD changed course and decided to advocate for a plan of reunification instead of termination. *Id.* In December 2013, the district court once again changed the permanency plan back to adoption, and CYFD renewed its motion for termination of parental rights. *Id.* at *16-18.

On March 23-25, 2015, the district court held a hearing on CYFD's Motion for Termination of Parental Rights (TPR). *Id.* at *20. In August of 2015, the district court entered its Order terminating the parental rights as to S.E. Girl, but not to S.E. Boy. *Id.* at *31-32. The district court's order terminating the parental rights as to S.E. Girl was not based on abuse and neglect but based on presumptive abandonment. *Id.* As for S.E. Boy, the district court entered a Periodic Judicial Review Order and Permanency Order which adopted a plan to reunify S.E. Boy with Plaintiffs and approved a treatment plan for Plaintiffs. *August 10, 2018, FOF & COL, II.A.ix.24*; (ROA, Vol. II, pg. 50)

As of November 7, 2017, the plan for S.E. Boy remained reunification. Nevertheless, the court found that although Plaintiffs tried to comply with the case plan, they had not addressed their sexually offending behavior. *Id. at II.A.ix.81-82,84*; (ROA, Vol. II, pgs. 65-66). Plaintiffs appealed the order terminating their parental rights to S.E. Girl. *Donna E. I*, 2017 N.M. App. LEXIS 42 (Ct. App. June 8, 2017).

The New Mexico Court of Appeals reversed and remanded to the district court on July 26, 2017. In its Opinion, the Court of Appeals reversed the district court's decision to terminate Plaintiffs' parental rights with respect to S.E. Girl. The error identified by the Appellate Court was that the termination was based on Plaintiffs' abandonment of S.E.

Girl, but there were no findings (and no evidence in the record on Appeal) to support any finding that Plaintiffs were responsible for causing the disintegration of the parent-child bond with S.E. Girl. The Court of Appeals did not "address [Plaintiffs'] evidentiary arguments about the testimony and finding and conclusions regarding [S.E. Boy] or any abuse or neglect of [both] Children" or their due process arguments. *See Donna E. I,* 2017 N.M. App. LEXIS 42, at *3. The court did not order that S.E. Girl be returned to Plaintiffs' custody. Instead, the court remanded the case to the district court for a determination of S.E. Girl's best interests. *Id.* at *51.

On remand, the Court of Appeals instructed the district court to "consider whether there are extraordinary circumstances that warrant depriving [Plaintiffs] of custody." *Donna E. I,* 2017-NMCA-088, *47-48. The court noted that extraordinary circumstances include (1) a showing of serious parental inadequacy with clear and convincing evidence— specifically, evidence of gross misconduct such as incapacity, moral delinquency, instability of character, or the inability to provide Daughter with needed care; and, (2) whether Daughter's contact with Plaintiffs has been so minimal that she has significantly bonded with her foster parents, and consideration of whether a healthy psychological parent-child relationship can be restored between Parents and Daughter.

### B. New Mexico State District Court's 2018 Decision on Remand from Court of Appeals

Per the Court of Appeals decision, the district court held a hearing to determine the best interests of S.E. Girl. The court took testimony from Plaintiffs and CYFD over the course of the two-day hearing on April 18-19, 2018. Relevant to this Appeal, the state

6

district court made a series of findings describing Plaintiffs' serious parental inadequacy. Notably, Plaintiffs did not challenge these findings when they later appealed the district court's best interests ruling. *See State ex rel. Children, Youth & Families Dep't v. Donna E.* ("*Donna E. II*"), No. A-1-CA-37727, 2019 N.M. App. Unpub. LEXIS 518, at \*7 (Ct. App. Dec. 27, 2019). In its Findings of Fact and Conclusion of Law, dated August 10, 2018, (ROA Vol. II, pg. 30), the district court made the following relevant findings of fact, which were unchallenged by Plaintiffs on appeal:

1.  In the fall of 2009, S.E. Boy, a first grader, had several incidents of acting out sexually at school, which prompted the school principal to contact Plaintiffs. *August 10, 2018, FOF & COL, II.A.i.1-3,* (ROA Vol. II, pg. 31).

2.  During her meeting with the school principal, Mrs. Everhart stated that she and Mr. Everhart knew their oldest son, Harley Jr., then 17, had been viewing pornography with their six-year-old, S.E. Boy. *Id. at II.A.i.5,* (ROA Vol. II, pg. 31).

3.  Mr. Everhart knew Harley Jr. was viewing "incestuous pornography"— pornography in which there were "families having sex with each other." *Id. at II.A.i.8,* (ROA Vol. II, pg. 32).

4.  The school principal counseled Mrs. Everhart to put a block on the computer to prevent Harley Jr. from accessing the sites or to take the keyboard.  Mrs. Everhart responded, "we don't know how to do that" and "why would we do that." *Id. at II.A.i.9-10,* (ROA Vol. II, pg. 32).

5.  Plaintiffs "took no affirmative action to prevent Harley Jr. from accessing pornography on the family computer, or from continuing to expose [S.E. Boy] to

pornography even after they became aware that such activity was occurring and was causing [Son] to act out sexually." *Id.* at *II.A.i.12,* (ROA Vol. II, pg. 32).

6.    In April of 2010, S.E. Boy reported to both Mr. Everhart and his school principal that Harley Jr., had raped him. *Id.* at *II.A.ii.1-2,* (ROA Vol. II, pg. 32-33).

7.    At the time of this report, Plaintiffs had known for more than seven months that Harley Jr. was viewing pornography with S.E. Boy while they were at work. *Id.* at *II.A.ii.3,* (ROA Vol. II, pg. 33).

8.    After the report, Mr. Everhart concluded that S.E. Boy made the allegations because he was mad at Harley Jr. over an iPod and took no further steps to investigate the allegations or to protect S.E. Boy or S.E. Girl from Harley Jr. *Id. at II.A.ii.4,* (ROA Vol. II, pg. 33).

9.    Once the authorities became involved, in May of 2010, S.E. Boy was taken for a Sexual Assault Examination by a Sexual Assault Nurse Examiner (SANE). *Id.* at *II.A.ii.5-6,* (ROA Vol. II, pg. 33).

10.    During the SANE exam, Mrs. Everhart encouraged S.E. Boy to masturbate and commented on the size of his genitalia. *Id.* at *II.A.iii.1-9,* (ROA Vol. II, pg. 34-36).

11.    Mrs. Everhart denied this behavior at the Best Interests Hearing, but her denials were not credible. *Id.* at *II.A.iv.1 and 3,* (ROA Vol. II, pg. 36).

12.    Plaintiffs were told by the SANE nurse and by a Hobbs Police Detective that Harley Jr. could have no contact with S.E. Boy and S.E. Girl. *Id.* at *II.A.ii.7-8,* (ROA Vol. II, pg. 33-34).

13.     On June 11, 2010, Hobbs Police executed a search warrant on Plaintiffs' home and found Harley Jr. at the residence along with S.E. Boy and S.E. Girl. *Id.* at *II.A.ii.9,* (ROA Vol. II, pg. 34)*.*

14.     Ultimately, Plaintiffs found out that Harley Jr. was having sexual intercourse with six-year old S.E. Boy but failed to take action to protect him or S.E. Girl. *Id.* at *II.A.ii,* (ROA Vol. II, pg. 32).

15.     In 2010 and 2011, S.E. Boy truthfully reported to his therapist during play therapy that he has watched sex on T.V. and on the computer with his mother and father. *Id.* at *II.A.v.2,4,5, 7 and 12,* (ROA Vol. II, pgs. 37-39).

16.     S.E. Boy further stated that it is okay "for kids to have sex with adults as long as they (the kids) say yes." *Id.* at *II.A.v.5 and 7,* (ROA Vol. II, pg. 38).

17.     S.E. Boy also stated that his mother and father took pictures of him naked. *Id.* at *II.A.v.8,* (ROA Vol. II, pg. 38).

18.     S.E. Boy's statement made during his treatment with the play therapist are true. *Id. at II.A.v.12,* (ROA Vol. II, pg. 39).

19.     Plaintiffs' computer contained photographic images of pornography depicting children under the age of 18 on an account that no one in Plaintiffs' home, other than Mr. Everhart, would use. *Id.* at *II.A.vii.6-7,* (ROA Vol. II, pgs. 45-46).

20.     Plaintiffs minimize the abuse suffered by S.E. Boy at the hands of Harley Jr. and they have refused to address their behaviors which resulted in their abuse of S.E. Boy. *Id.* at *II.A.vi., 1-8; II.A.ix.1-84,* (ROA Vol. II, pgs. 46-66). Specifically:

[Plaintiffs] have, for over two years now, been ordered to directly address issues which have been raised by their, not Harley Jr.'s, actions and behavior.   [Plaintiffs], however, believe [S.E. Boy] lied to his therapists and deny they engaged in any abusive conduct toward [S.E. Boy], they deny and minimize the extent of his abuse by Harley Jr. and others, Mrs. Everhart denies her behavior and statements at [S.E. Boy's] SANE exam, and Mr. Everhart believes the matter was just the product of "communication problem."  As such, Respondents will not accept any therapeutic services which focus on them as perpetrators of [S.E. Boy's] abuse. Their resistance precludes them from effectively progressing to a point where the children can safely be returned to their custody.

*Id.* at *II.A.ix.84,* (ROA Vol. II, pg. 36).

21.     S.E. Boy and S.E. Girl were taken out of Plaintiffs' home partly because it was in an unsanitary condition.  There was trash, dirty clothes, plates and decaying food throughout the kitchen, dining room, living room, bedrooms and bathroom. *August 10, 2018, FOF & COL, II.A.vii.1,* (ROA Vol. II, pg. 41).

22.     While Mr. Everhart accepted that the home was unsanitary, Mrs. Everhart refused to acknowledge that fact and blamed it on the police. *Id.* at *II.A.vii.2-5,* (ROA Vol. II, pg. 41).

23.     On September 30, 2016, the state district court ordered Plaintiffs to allow CYFD access to their home so it could assess whether the home was safe and suitable for children. *Id.* at *II.A.vii.6,* (ROA Vol. II, pg. 41-42).

24.     Despite repeated attempts, Plaintiffs would not allow CYFD access to the home until January 2017, when they allowed limited access. *Id.* at *II.A.vii.7-11,* (ROA Vol. II, pgs. 42-43).

25.     In January 2017, the court ordered Plaintiffs to cooperate with CYFD in visits to the home. *Id.* at *II.A.vii.13,* (ROA Vol. II, pg. 43).

26.     Between January and June of 2017, Plaintiffs did not cooperate in any unannounced visits. *Id.* at *II.A.vii.14,* (ROA Vol. II, pg. 43).

27.     During scheduled visits, CYFD discovered that the bedroom that could be S.E. Girl's if she were returned home is used by Plaintiffs as a storage room.  Items are piled approximately four and half feet high and there is no room for furniture and no path into the room. *Id.* at *II.A.vii.17,* (ROA Vol. II, pg. 44).

28.     Plaintiffs refused to allow CYFD access to their home for scheduled and unscheduled visits. *Id.* at *II.A.vii.21,* (ROA Vol. II, pg. 44).   Plaintiffs would not acknowledge the current condition of the home or the problems it posed for the children and did not made any progress on rectifying the problem between 2017 and 2018. *Id.* at *II.A.vii.27,* (ROA Vol. II, pg. 45).

Based on these facts, as well as others, the district court made the following relevant Conclusions of Law:

C.     In New Mexico there is a presumption that it is in the child's best interests to be raised by his or her biological parents, however, the presumption is never conclusive.  *In the Matter of the Adoption of J.J.B.*, 1995-NMSC-026 ¶ 58, 119 N.M. 638, 894 P.2d 994 (S.Ct. 1995).

D.     "Custody based upon the biological parent-child relationship may be at odds with the best interest of the child. When that happens, the best interest of the child must prevail." *Id.* (citations omitted).

E.     "In extraordinary circumstances, custody of a child may be awarded to a nonparent over the objections of a parent."  *Id.* at ¶ 59.

F.    Extraordinary circumstances may exist when there is a showing, by clear and convincing evidence, of "serious parental inadequacy." *Id.* at ¶ 59-61.

…

H.    A showing by clear and convincing evidence that extraordinary circumstances exist will rebut the presumption in favor of a natural parent. *See State ex rel. Children, Youth & Families Dep't v. Lance K.*, 2009-NMCA-054, ¶ 47, 146 N.M. 286, 209 P.3d 778.

I.    If a court finds extraordinary circumstances exist, it must determine whether in the child's best interest custody should be awarded to a non-parent. *In the Matter of the Adoption of J.J.B.*, 1995-NMSC-026 ¶ 62, 119 N.M. 638, 894 P.2d 994 (S.Ct. 1995).

J.    In determining the best interest of the child, the court should evaluate whether there is clear and convincing evidence of "gross misconduct" on the part of the natural parents "such as incapacity, moral delinquency, instability of character, or inability to provide a child with needed care." *Id.* at ¶ 67.

…

M.    Clear and convincing evidence supports the conclusion [that Plaintiffs] exhibit serious parental inadequacies.

…

O.    Clear and convincing evidence supports the conclusion that extraordinary circumstances exist.

P.    Clear and convincing evidence supports the conclusion that [Plaintiffs] have engaged in gross misconduct, are morally delinquent, and unable to provide [S.E. Girl] with needed care.

*August 10, 2018, FOF & COL,* (ROA Vol. II, pgs.74-76).

Ultimately the court concluded that maintaining S.E. Girl in the custody of CYFD was in her best interests and it ordered that contact between Plaintiffs and S.E. Girl must not be reestablished.

### C.  New Mexico Court of Appeals December 27, 2019 Decision

Plaintiffs appealed the district court's best interests order. In their appeal, Plaintiffs claimed multiple violations of their right to due process.  *State ex rel. Children, Youth & Families Dep't v. Donna E.* ("*Donna E. II*"), No. A-1-CA-37727, 2019 N.M. App. Unpub. LEXIS 518, at *3-4 (Ct. App. Dec. 27, 2019). Specifically, Plaintiffs argued that (1) they should have be given an opportunity to re-establish a parent-child relationship; (2) CYFD never provided fair notice of what specific changes they needed to make to alleviate the causes and conditions of neglect; (3) extraordinary circumstances that are not the fault of Plaintiffs do not suffice to justify continued or permanent no-contact; and (4) evidence presented to justify the no-contact provision was stale. *Id.*

The Court of Appeals rejected Plaintiffs' due process arguments.  *Id.* at *4-5. The court recognized that biological parents have fundamental rights but noted that the best interests of the child take precedence over those rights.  The Court of Appeals upheld the district court's ultimate determination that the Daughter's best interest outweighed the parents' fundamental rights to a relationship with their daughter. The court found no error in the district court's reliance on facts showing Plaintiffs "serious parental inadequacy . . . specifically, evidence of gross misconduct such as incapacity, moral delinquency, instability of character, or the inability to provide Daughter with needed care."

Notably, Plaintiffs did not challenge the sufficiency of the evidence supporting any of the court's findings on appeal, including the facts establishing serious parental inadequacy. *Donna E. II*, at *7.  Instead, Plaintiffs argued that the facts the district court relied on to make its finding were stale. *Id.* at *12. The Court of Appeals disagreed.  The

13

Court of Appeals noted that Plaintiffs did not point to any facts or evidence suggesting that their parenting abilities had improved, which would have negated the previous evidence of misconduct.  *Id.* at *13-14.  Also, the Court noted that the district court's order was "soundly supported by current evidence" of parental inadequacy—namely the Plaintiffs failure address the behaviors which resulted in their abuse and neglect and their inability to provide a safe and clean living environment for a child.  *Id.* at *15.

### D.     Plaintiffs' Petition for Certiorari to New Mexico Supreme Court

On January 27, 2020, Plaintiffs filed a Petition for Certiorari to the New Mexico Supreme Court, seeking review of the Court of Appeals December 27, 2019 decision ("*Donna II*").  *See Pet. For Cert., (ROA 362).*  In the Petition, Plaintiffs claimed it is a violation of due process to rely on "extraordinary circumstances" created by the government—namely the long absence of the child from her parents—to support a finding that the parents are not entitled to custody of their children.  The Plaintiffs did not challenge the district court and court of appeals ruling that "extraordinary circumstances" exist to deprive the parents of custody because of Plaintiffs' serious parental inadequacy.  *See State ex rel. Children, Youth & Families Dep't v. Donna E.* ("*Donna E. II*"), No. A-1-CA-37727, 2019 N.M. App. Unpub. LEXIS 518, at **7, 12, 13-14 (Ct. App. Dec. 27, 2019); *see also August 18, 2018 Findings of Fact and Conclusion of Law* (ROA, Vol. II, pg. 30). On March 31, 2020, the New Mexico Supreme Court denied Plaintiffs' Petition for Certiorari. (ROA, Vol. II, pg. 91).

### E.  Federal Court Litigation

Coinciding with the state court litigation was the federal court litigation, filed by Plaintiffs on November 13, 2017. In the controlling complaint, (ROA, Vol. I, pg. 128), Plaintiffs sued CYFD and two CYFD employees, alleging that they violated their Constitutional rights to familial association, procedural due process and freedom from unlawful search and seizure.[1] Plaintiffs sought compensatory damages, punitive damages and attorneys' fees.

On October 8, 2019, Plaintiff filed a "Motion for Issue Preclusion," alleging the issues in the case had already been decided by the state district court. (ROA, Vol. I., pg. 165). Defendants responded to that Motion (ROA, Vol. I, pg. 184), but Plaintiffs did not file a Reply. On January 21, 2020, Defendants moved for summary judgment asserting that Plaintiffs' claims were barred by the Rooker Feldman doctrine, that Plaintiffs' claims were barred by Issue and Claim Preclusion, and that the individual Defendants were entitled to qualified immunity.  (ROA, Vol. II, pg. 6).

The district court referred both motions to Chief Magistrate Judge Garza for report and recommendation. (ROA, Vol. I, pg. 348). Chief Magistrate Judge Garza recommended that Plaintiff's "Motion for Issue Preclusion" be denied, and that Defendants' Motion for Summary Judgment be granted. (ROA, Vol. I, pg. 373). The district court adopted that recommendation over Plaintiffs' objection. (ROA, Vol. I, pg.  422).

---

[1] Plaintiff also brought claims against the City of Hobbs and its officers.  Those claims were resolved and not relevant to this appeal.

On appeal, Plaintiffs challenge the district court ruling denying their Motion for Issue Preclusion and granting the Defendants Motion for Summary Judgment, based on qualified immunity, as to Plaintiffs' claims for violation of the right to familial association and procedural due process. In their appeal, Plaintiffs do not challenge the district court's ruling that Defendants were entitled to qualified immunity on Plaintiffs Fourth Amendment search and seizure claims.  In addition, Plaintiffs commit several pages of their opening brief arguing against application of the Rooker-Feldman Doctrine. Plaintiffs' arguments are baffling considering the district court found that the Rooker-Feldman doctrine does not apply in this case. (ROA, Vol. 1, pg. 386; pg. 428).[2]

## SUMMARY OF THE ARGUMENTS

In this appeal, Plaintiffs challenge the district court's rulings denying their Motion for Issue Preclusion and granting Defendants' Motion for Summary Judgment, based on qualified immunity.  The district court correctly denied Plaintiffs' Motion for Issue Preclusion because Plaintiff failed to demonstrate that the parties who would be adversely affected by invocation of issue preclusion—namely Defendants Becker and Valderaz— were parties to the state court litigation. The district court also correctly found that Plaintiffs failed to properly support their Motion for Issue Preclusion insofar as they did

---

[2] Defendants can only surmise that Plaintiffs included the Rooker-Feldman discussion as an opportunity to reassert their false claim that the New Mexico Court of Appeals has not considered their constitutional claims. While it is true that the Court of Appeals did not take up the constitutional claims in 2017, it certainly ruled on them in its 2019 decision. *See Donna E. II*, 2019 N.M. App. Unpub. LEXIS 518, at *4-5. It was this ruling that partially laid the foundation for Defendants' Rooker-Feldman and res judicata arguments.

not support their contentions with citations to the record.  Finally, public policy dictates against invoking issue preclusion under the circumstances of this case.

The district court correctly determined that Defendants Becker and Valderaz were entitled to qualified immunity on Plaintiffs' constitutional claims for violations of the right to familial association and procedural due process. In both instances, Plaintiffs failed to carry their burden to show that these Defendants violated their constitutional rights.  In addition, Plaintiffs failed to show that the unlawfulness of the alleged conduct in the particular circumstances was clearly established at the time of the conduct.

## ARGUMENT AND AUTHORITIES

## I.    THE DISTRICT COURT CORRECTLY DENIED PLAINTIFFS' MOTION FOR ISSUE PRECLUSION.

Assuming the Court has jurisdiction to review the district court's decision denying Plaintiffs' Motion for Issue Preclusion, the Court should affirm the district court's decision. In their Motion for Issue Preclusion, Plaintiffs asked the district court to bar Defendants from litigating some of the issues and/or facts allegedly decided in the state court case. (ROA, Vol. I, pg. 165).  Plaintiffs' motion asserted offensive estoppel, which if successful, would have prevented Defendants from contesting issues that were previously decided against them in the state court litigation.  *Parklane Hosiery Co., v. Shore,* 439 U.S. 322 (1979).

To evaluate the preclusive effect of a state court judgment, a federal court must look to that state's law.  *Lance v. Dennis*, 546 U.S. 459, 466 (2006). New Mexico courts' treatment of preclusion is similar to the federal standards. *See Potter v. Pierce*, 2015-

NMSC-002, 342 P.3d 54, 57 (N.M. 2015) ("Federal law and New Mexico law are consistent on the general standards governing claim preclusion."). In New Mexico, a party asserting issue preclusion must demonstrate that (1) the adversely affected party was a party to the prior litigation, (2) the two causes of action are different, (3) the issue was actually litigated in the prior litigation, and (4) the issue was necessarily determined in the prior litigation. *Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, 148 N.M. 228, 233 P.3d 362, 365-66 (2010). The Court must also determine if the adversely affected party had a full and fair opportunity to litigate the issue in the prior proceeding. *Shovelin v. Cent. N.M. Elec. Coop., Inc*., 1993-NMSC-015, ¶ 10, 115 N.M. 293, 297, 850 P.2d 996, 1000; *see also DeFlon v. Sawyers,* 2006-NMSC-025, ¶ 14, 139 N.M. 637, 643, 137 P.3d 577, 583 ("The main concern is that a party against whom collateral estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior action.").

Chief Magistrate Judge Garza rejected Plaintiffs' Motion for Issue Preclusion because Plaintiffs' motion failed to provide any record citations or legal authority to support their factual recitation. (ROA Vol. I, pg. 388). In addition, Judge Garza rejected Plaintiffs' Motion because they failed to meet a critical element of their claim—namely that the Defendants were parties to the state court litigation or in privity with parties to the state court litigation. (ROA Vol. I, pg. 389). Finally, Judge Garza opined that Plaintiffs' Motion for Issue Preclusion could not succeed because the state court litigation was not final.

Plaintiffs objected to Magistrate Judge Garza's conclusion that the state court litigation had not yet reached a final judgment. (ROA Vol. I, pg. 407). Judge Brack adopted

the Recommended Disposition, noting that even if the state court judgment was not final, Plaintiffs failed to demonstrate that the parties were the same in the federal and state litigation. (ROA Vol. I, pg. 422). The district court's decision denying Plaintiffs' Motion for Issue Preclusion should be affirmed for multiple reasons.

### A. Plaintiffs failed to show that the parties adversely affected by the proposed issue preclusion were parties to the prior litigation.

Chief Magistrate Garza and Judge Brack correctly found that Plaintiffs failed to meet the most basic element of their claim—namely that the adversely affected parties were parties to the prior litigation. *Ideal*, 2010-NMSC-022, 148 N.M. 228, 233 P.3d 362, 365-66 (noting that in New Mexico, a party asserting issue preclusion must show, among other things, that the adversely affected party was a party to the prior litigation). A simple review of the state court docket sheet clearly demonstrates that those Defendants adversely affected by issue preclusion in the federal case—namely Becker and Valderez—were not parties to the state court case. (*See* ROA Vol. I, pg. 195). Plaintiffs propose to hold Ms. Becker and Ms. Valderaz individually liable for constitutional violations based on state court findings which they had no opportunity to litigate. This would be an obvious injustice. *See Reeves v. Wimberly*, 1988-NMCA-038, ¶¶ 13, 107 N.M. 231, 234 (noting limitation on the use of issue preclusion where the party against whom it is asserted has not had a full and fair opportunity to litigate the issue in the first action). Plaintiffs have not disputed, either before the district court or in their Opening Brief, evidence which clearly shows that Defendants Becker and Valderaz were not parties to the state litigation.

19

Accordingly, this Court should affirm the district court's decision denying Plaintiffs' Motion for Issue Preclusion.

### B. Plaintiffs failed to properly support their Motion for Issue Preclusion.

Plaintiffs also failed to properly support their motion for issue preclusion. This reason alone is an alternative basis for affirming the district court's judgment on this issue. *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003) ("This court can affirm the district court's dismissal on any ground sufficiently supported by the record.")

The party asserting issue preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment on which they rely. *Silva v. State*, 106 N.M. 472, 476 (1987); 18 Moore's Federal Practice - Civil §132.05 (2019) (citing cases). The party invoking the doctrine must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated. *See Silva*, 106 N.M. at 476.

In this case, Plaintiff advocated in the district court and again on appeal, wholesale adoption of the facts alleged in their Motion for Issue Preclusion. Plaintiffs take this stance despite their complete failure to support their motion with anything at all, other than counsel's conclusory statements. (ROA Vol. I, pg. 165; pg. 427-28). The facts set forth in Plaintiffs' Motion for Issue Preclusion were not supported by proper record evidence in contravention of Fed. R. Civ. P. 56. In fact, Plaintiffs did not even introduce the bare minimum—the decision of the prior court on which they relied—much less identify where in the record each issue was previously litigated. There was no indication as to whether Plaintiffs relied on the district court's 2015 Findings of Fact and Conclusions of Law, the

20

district court's 2018 Findings of Fact and Conclusions of Law, or the Court of Appeals 2017 Opinion.  Plaintiffs' failure to introduce a record on which the district court could base its decision was reason alone to deny Plaintiffs' Motion. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 n.4 (9th Cir. 1988) (when defendants failed to introduce judgment, complaint, or any other evidence of prior action upon which their assertion of claim preclusion was based, they did not meet their burden of establishing preclusion).

### C.  Public Policy dictates that offensive collateral estoppel is not appropriate in this case.

Public policy considerations also strongly weigh against permitting offensive estoppel against CYFD or its employees. The Supreme Court has held that the federal government cannot be offensively estopped because, among other reasons, government litigation is motivated by a number of factors besides winning and losing.  *See United States v. Mendoza*, 464 U.S. 154 (1984); *see also Bogle Farms, Inc. v. Baca*, 1996 NMSC 51, 122 N.M. 422, 925 P.2d 1184 (1996) (finding a strong public interest in not allowing offensive collateral estoppel to be used against the public lands commissioner).  Those same principles support not allowing offensive preclusion against public servants protecting the children of this state. Matters decided in Childrens' court do not focus on winners and losers, and certainly do not focus on money damages.  That litigation is focused exclusively on the best interests of the children, and, particularly in this case, protecting them from predators.

21

In addition, applying offensive collateral estoppel would not be efficient. The underlying policy for allowing offensive estoppel is efficiency. *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000). Here, efficiency would not be served even if the Court permitted Plaintiffs to employ offensive issue preclusion against CYFD. The individual Defendants were not parties in the previous litigation. Evaluating the claims against the individual Defendants in the current case will require assessing their intent and balancing the interest of the state in protecting the children versus the plaintiffs' right to a familial relationship. *Halley v. Huckaby*, 901 F.3d 1136, 1153-54 (10th Cir. 2018). Wholesale adoption of the state courts' decisions will not eliminate the need for this analysis, and thereby not improve the efficiency of the courts.

## II. THE DISTRICT COURT CORRECTLY DECIDED THAT DEFENDANTS BECKER AND VALDERAZ WERE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' RIGHT TO FAMILIAL ASSOCIATION CLAIM.

The federal civil-rights statute, 42 U.S.C. §1983, authorizes suits against persons acting under color of state law for violations of rights granted by federal law. *See Stanley v. Gallegos,* 852 F.3d 1210, 1211 (10th Cir. 2017). Under the doctrine of qualified immunity, however, the defendant is not personally liable for every violation of such rights. *Id.* "Wary of the damage to public welfare if government officers were deterred and distracted from vigorous performance of their duties by excessive exposure to litigation, the courts provide them qualified immunity from suit despite their violations of federal law unless the unlawfulness of their actions has been clearly established by the time they act." *Id.*

Once an individual defendant asserts qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Walton v. Gomez (Estate of Booker),* 745 F.3d 405, 411 (10th Cir. 2014) (quotations and citations omitted) (emphasis added). The Tenth Circuit has described this test as a "heavy two-part burden," established to protect "all but the plainly incompetent or those who knowingly violate the law." *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016) (internal citations and quotations omitted). Plaintiffs' failure to establish either of the two requirements is fatal to their claim. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## A. Plaintiffs did not carry their burden to show that Defendants violated their Constitutional Right to Familial Association.

The right to familial association has long been recognized as a substantive due process right, arising from the freedom of intimate association. *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993). The Tenth Circuit has found that "[t]he government's 'forced separation of parent from child, even for a short time, represents a serious impingement' on a parent's right to familial association." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010)). Mere negligent interference with a family relationship, however, does not violate the constitution. The officials in question "must have intended to burden the relationship." *Halley v. Huckaby*, 902 F.3d 1136, 1155 (10th Cir. 2018). To that end, for Plaintiffs to show a violation of their right to familial association, they must show: (1) the officials

23

intended to deprive the plaintiff of a protected relationship with a family member, and (2) the officials' intrusion into the relationship was not warranted by state interests in the health and safety of the family member. *Halley*, 902 F.3d at 1154-1155 (citing *Thomas*, 765 F.3d at 1196).

In this case, the alleged wrongs Plaintiffs point to are the delays in the state district court proceedings and CYFD's changes to the permanency plan.  At best, these alleged wrongs amount to negligent interference with Plaintiffs' relationship with their children. In addition, Plaintiffs failed to present any factual evidence from the record showing that Defendants intentionally directed conduct to damage the familial relationship. (ROA, Vol. I, pg. 396). To the contrary, the undisputed record evidence shows that these Defendants were motivated to protect these children from an extremely abusive situation.  Just a few of the most egregious facts in this case include:

1) Plaintiffs ignored the fact that their seventeen-year-old son was watching pornography with and having sex with their six-year-old son. *Undisputed Facts (B)(2)-(8), (14)*, *(ROA, Vol. II, pg. 11-12)*.

2) Plaintiffs failed to protect S.E. Boy and S.E. Girl from Harley Jr. *Undisputed Facts (B)(14)*, *(ROA, Vol. II, pg. 12)*.

3) Plaintiffs themselves watched pornography with their six-year-old son and took pictures of him naked. *Undisputed Facts (B)(15)(17)(18)*, *(ROA, Vol. II, pg. 13);*

 4) During his sexual assault exam, Mrs. Everhart encouraged S.E. Boy to masturbate and commented on the size of his genitalia. *Undisputed Facts (B)(10)*, *(ROA, Vol. II, pg. 12)*.

5) Plaintiffs kept child pornography on their home computer. *Undisputed Fact (B)(19)*, *(ROA, Vol. II, pg. 13)*.

6) Despite repeated attempts by the court and CYFD to assist them in therapy, Plaintiffs continually minimized the abuse suffered by S.E. Boy at the hands of Harley Jr. and they have refused to address their behaviors which resulted in their abuse of S.E. Boy. *Undisputed Fact (B)(2), (ROA, Vol. II, pg. 11); see also FOF, II.A.vi., 1-8, (ROA, Vol. II., pg 39-40).; FOF II.A.ix.1-84, (ROA, Vol. II., pg 46-66).*

As the New Mexico state district court found in its 2018 best interests ruling, Plaintiffs' actions amounted to "gross misconduct," "moral delinquency" and ultimately, the inability to provide their child with needed care. *See August 10, 2018, FOF & COL; (ROA, Vol. II, pg.76), affirmed by, Donna E. II*, 2019 N.M. App. Unpub. LEXIS 518*; see also, In the Matter of the Adoption of J.J.B.*, 1995-NMSC-026 ¶ 62, 119 N.M. 638, 894 P.2d 994 (holding that extraordinary circumstances exist to overcome the presumption that a child should be raised by biological parents with a showing that parents have engaged in gross misconduct, moral delinquency and the like). Having engaged in this egregious conduct, the only reasonable conclusion this Court can make is that Becker and Valderez' alleged intrusion into the relationship between Plaintiffs and their children was warranted by the state's interests in the health and safety of the children. *Halley*, 902 F.3d at 1154-1155 (citing *Thomas*, 765 F.3d at 1196.). Accordingly, there can be no finding that a constitutional violation occurred.

In addition, Plaintiffs failed to show specific actions taken by Defendants Becker and Valderez indicating their intent to deprive them of a relationship with their children.

Liability for damages for a constitutional tort under §1983 is personal, such that an individual government defendant in a §1983 action must have personal involvement in the alleged wrongs. *Gates v. Unified Sch. Dist. No. 449,* 996 F.2d 1035, 1042 (10th Cir. 1993) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981); *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) (noting that in a §1983 case a plaintiff must show the defendant "caused" the constitutional deprivation). Plaintiffs have yet to articulate what specific actions Defendants Becker and Valderaz took that violated their right to a familial relationship. Plaintiffs complain generally about delays and changed treatment plans but fail to show how Defendants Becker and Valderaz were personally involved in the delays and changes.

**B. Plaintiffs did not carry their burden to show that the unlawfulness of the alleged conduct in the particular circumstances was clearly established at the time of the conduct**.

In addition, Plaintiffs have failed to carry their burden to show the existence of clearly established precedent putting Defendants Becker and Valderaz on notice that their actions were unlawful.  An official is entitled to qualified immunity unless the unlawfulness of his conduct in the particular circumstances before him was clearly established at the time of the conduct.  *District of Columbia v. Wesby,* 138 S. Ct. 577, 589-90 (2018); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. . . . It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby,* 138 S. Ct. at 589-90.  In fact, the United States Supreme Court recently reaffirmed "the clearly established law must be 'particularized' to

the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (quoting *Anderson*, 483 U.S. at 640). "The question is not whether a 'broad general proposition' was clearly established," but "'whether the violative nature of particular conduct [was] clearly established.'" *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U.S. at 639).

In this case, CYFD removed the children from a home where the parents were known to have watched pornography with their minor children and where the parents were willfully ignorant of a sexual assault perpetrated by their teenage son on their six-year-old son. (ROA Vol II., pgs. 11-13). CYFD continued to recommend that the children be kept from the home when the parents did not adequately address the reasons behind the older child's behavior.  (ROA Vol II., pg. 13).

While Plaintiffs cite several cases that stand for the general proposition that familial association is a recognized substantive due process right, none of those cases involve conduct similar or even comparable to the conduct here.  For example, *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.,* 191 F. 3d 1306, 1314 (10th Cir. 1999), established that where a government official obtains a court order to seize a child by misrepresenting or distorting the facts, the government official violated the Fourth Amendment. In *Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993), this Court reversed a judgment against a police officer for violating the plaintiff's right to familial association even though he lied to the plaintiff

about her husband confessing to sexual abuse. In this case, there are no facts in the record showing that the individual defendants misrepresented or distorted the facts or lied to the court or either of the Plaintiffs. (ROA, Vol. I., pg. 396).

The other cases Plaintiffs cited are even more remote to the facts of this case.  In *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014), this Court held that that the plaintiff's complaint pled sufficient facts showing a deprivation when a doctor placed a medical hold on a child that was non-emergent. The case *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1325 (10th Cir. 2007) has to do with a school administrator's First Amendment retaliation claim.  Accordingly, because Plaintiff has failed to show that Defendants' conduct violated a clearly established law, the district court's application of qualified immunity was correct.

III.  **THE DISTRICT COURT CORRECTLY DECIDED THAT DEFENDANTS BECKER AND VALDERAZ WERE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' PROCEDURAL DUE PROCESS CLAIMS**

Plaintiffs allege that Defendants violated their rights to procedural due process because of long delays in the proceedings in state court after their children were removed from the home. "Under the Fourteenth Amendment to the United States Constitution, parents have a protected liberty interest in the care, custody and control of their children." *Gomes v. Wood*, 451 F.3d 1122, 1127 (10th Cir. 2006) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "As a result, state officials may not remove children from the home, through either temporary seizures or the permanent termination of parental rights, without providing due process of law." *Id.* at 1127 (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)). Yet, parents' liberty interest is not absolute, as states have an "interest in

28

preserving and promoting children's welfare...including a traditional and transcendent interest" in protecting children from abuse. *Id.* at 1127-1128 (internal citations and quotation marks omitted).

Consequently, when a state seeks to remove a child from his or her parents' custody, due process requires that the parents receive prior notice and a hearing. *Id.* (citing *Spielman v. Hildebrand*, 873 F.2d 1377, 1385 (10th Cir. 1989)). "Although the exact procedures required by the Constitution depend on the circumstances of a given case, '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Jensen*, 603 F.3d at 1200 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks and brackets omitted). In addition, to overcome a qualified immunity defense asserted in response to a procedural due process claim, "a plaintiff must show that the defendant was more than simply negligent." *Brown v. Montoya*, 662 F.3d 1152, 1170 (10th Cir. 2011) (citing *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986)) (suggesting that the court would require more than simple negligence but declining to resolve which particular state of mind is required for a procedural due process violation).

Defendants Becker and Valderaz are entitled to qualified immunity on Plaintiffs' procedural due process claims because Plaintiffs failed to show Defendants violated their procedural due process rights.  At most, Plaintiffs allege that Defendants were negligent.

First, Plaintiffs fail to describe what conduct Defendants Becker and Valderaz took to violate their right to procedural due process.  Instead, Plaintiffs rely on Defendant Becker's deposition testimony wherein she acknowledged that CYFD had a role in the

29

delay of the termination proceedings. While Defendant Becker admitted she bore some responsibility for the timeliness of proceedings, Plaintiffs have not provided evidence that Defendants Becker intentionally delayed proceedings. At most, Plaintiffs allege that Defendant Becker was negligent by not pushing forward the proceedings.  Absent any further allegation of misconduct, simple negligence or passivity is insufficient to defeat qualified immunity on a procedural due process claim. *See Brown v. Montoya*, 662 F.3d 1152,1170 (10th Cir. 2011).

Furthermore, the record shows the state district court convened numerous hearings during the delays that Plaintiffs attribute to CYFD. (ROA Vol. I, pg. 195; State Court Docket Sheet, at 14-19). During these hearings, Plaintiffs could have addressed CYFD's failure to respond to their motion for summary judgment, or complained the delays were violating their constitutional right to be heard.

Finally, the record is replete with evidence that Plaintiffs were responsible for many of the delays.  Initially the state district court found that Plaintiffs did not make sufficient efforts to comply with their treatment plan or that they had not made significant progress. *See supra*, at 3-4.  Later, as noted by the state district court in the 2018 FOF and COL, Plaintiffs failed to cooperate with CYFD in allowing them to access their home and failed to acknowledge their role in the sexual abuse suffered by their son.  *See supra*, at 10-11.

In light of Plaintiffs' failure to provide any evidence of specific actions, or inactions, taken by Defendants that denied them a meaningful opportunity to be heard, and given the state district court's numerous hearings and Plaintiffs' own failures, the district court correctly found that Plaintiffs were not deprived of their procedural due process rights.

## CONCLUSION

The district court correctly concluded that: a) Plaintiffs failed to show that the parties affected by issue preclusion were also parties to the state court litigation; b) that Defendants were entitled to qualified immunity on Plaintiffs' claim that they violated their right to a familial association; and c) that Defendants were entitled to qualified immunity on Plaintiffs' claim for violation of procedural due process. This Court should uphold the district court's Order denying Plaintiffs' Motion for Issue Preclusion and granting Defendants' Motion for Summary Judgment.

Respectfully submitted,

ATWOOD, MALONE, TURNER & SABIN, P.A.

By **Electronically Filed on 05/06/21**
    Bryan Evans
    P.O. Drawer 700
    Roswell, NM 88202-0700
    (575) 622-6221
    *Counsel for Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) which limits principal briefs to no more than 13,000 words because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,389 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 ProPlus.


Date: May 6, 2021

*/s/ Bryan Evans*
Bryan Evans
P.O. Drawer 700
Roswell, NM 88202-0700
(575) 622-6221
*Counsel for Defendants-Appellees*

## CERTIFICATE OF DIGITAL SUBMISSION

I HEREBY CERTIFY that one copy of Appellant's Opening Brief was submitted in digital form via this Court's CM/ECF filing system, and that seven (7) exact hard copies of this Opening Brief were sent via FedEx to Christopher M. Wolpert, United States Court of Appeals for the Tenth Circuit Byron White U.S. Courthouse 1823 Stout Street Denver, CO 80257, per the Court's Minute Order entered in this case on May 6, 2021.

I ALSO CERTIFY that all required privacy redactions have been made per 10th Cir R. 25.5;

I ALSO CERTIFY that the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program on this 6thth day of May, 2021, and according to the program, was free of viruses.


Date: May 6, 2021

> _/s/ Bryan Evans_
> Bryan Evans
> P.O. Drawer 700
> Roswell, NM 88202-0700
> (575) 622-6221
> _Counsel for Defendants-Appellees_

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2021, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Max Houston Proctor
masproctorlaw@gmail.com
taishaherring@hotmail.com

Date: May 6, 2021

/s/ Bryan Evans
Bryan Evans
P.O. Drawer 700
Roswell, NM 88202-0700
(575) 622-6221
Counsel for Defendants-Appellees

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DONNA EVERHART, et al.,

      Plaintiffs,

v.                                       CV No. 17-1134 RB/CG

JOHN DOMINGUEZ, et al.,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Defendants New Mexico Children Youth and Family Services ("CYFD"), Dana Becker, and Evgenia Valderaz's *Motion for Summary Judgment and Memorandum in Support* (the "Motion"), (Doc. 144), filed January 21, 2020; Plaintiffs Donna Everhart and Harley Everhart's *Memorandum in Support of Denial of Motion for Summary Judgment by the Defendants* (the "Response"), (Doc. 146), filed February 10, 2020; and Defendants' *Reply in Support of Motion for Summary Judgment* (the "Reply"), (Doc. 152), filed February 28, 2020. This matter is also before the Court on Plaintiffs' *Motion For Issue Preclusion*, (Doc. 132), filed October 8, 2019; and Defendants' *Response to Plaintiffs' Motion For Issue Preclusion*, (Doc. 143), filed November 22, 2019.

On February 14, 2020, United States District Judge Robert C. Brack referred this matter to the undersigned to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 147). After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that Plaintiffs' *Motion For Issue Preclusion*, (Doc. 132), be **DENIED**, and Defendants' *Motion for Summary Judgment*

EXHIBIT 1

and Memorandum in Support, (Doc. 144), be **GRANTED**. As a result, the Court

**RECOMMENDS** that Defendants CYFD, Becker, and Valderaz be **DISMISSED** from

this action **WITH PREJUDICE**.

## I.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A fact is "material" if it could have an effect on the outcome

of the lawsuit. *Smothers v. Solvay Chems.*, *Inc.*, 740 F.3d 530, 538 (10th Cir. 2014)

(citation omitted). A dispute over a material fact is "genuine" if the evidence presented

could allow a rational jury to find in favor of the non-moving party. *E.E.O.C. v.*

*Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (internal citation

omitted). To survive summary judgment, "[g]enuine factual issues must exist that 'can

be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party.'" *Harapat v. Vigil*, 676 F. Supp. 2d 1250, 1258-59 (D.N.M. 2009) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

In considering a summary judgment motion, a court views the facts in the light

most favorable to the non-moving party and draws all reasonable inferences in his or

her favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A party seeking

summary judgment bears the initial burden of showing there is no genuine dispute as to

any material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

When the movant does not have the burden of persuasion at trial, it can satisfy its

burden at the summary judgment stage by identifying a lack of evidence on an essential

element of the claim. *Id.* at 671. If the party seeking summary judgment satisfies its

burden, the burden then shifts to the non-movant. *Id.*

      The non-movant cannot rest on the pleadings but must "designate specific facts

so as to make a showing sufficient to establish the existence of an element essential to

that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d

1205, 1209 (10th Cir. 2000) (citation omitted). Specifically, the non-movant must identify

facts from which a rational trier of fact could find in the non-movant's favor, utilizing

evidence such as affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144

F.3d at 671. The party cannot rest on ignorance of the facts, speculation, or

unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125,

1129 (10th Cir. 2003).

      In addition, "[t]he mere existence of a scintilla of evidence will not avoid summary

judgment." *Harapat*, 676 F. Supp. 2d at 1259 (citing *Vitkus v. Beatrice Co.*, 11 F.3d

1535, 1539 (10th Cir. 1993)). If the evidence in favor of the nonmovant "is merely

colorable . . . or is not significantly probative, . . . summary judgment may be granted."

*Id.* (quoting *Anderson*, 477 U.S. at 249). "A fact is 'disputed' in a summary-judgment

proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a

simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total

S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008) (citing Fed. R. Civ. P. 56(e)).

## II.   **Introduction**

      In Defendants' Motion, they provide an enumerated list of undisputed material

facts, which they support with citations to the following: Plaintiffs' Second Amended

Complaint, (Doc. 109); the New Mexico Court of Appeals' 2017 opinion, *State ex rel.*

*Children, Youth & Families Dep't v. Donna E.*, 2017-NMCA-088, 406 P.3d 1033

("*Donna E. I*" decision); the Fifth Judicial District Court's August 2018 Findings of Fact

and Conclusions of Law ("District Court's 2018 Findings and Conclusions"), (Doc. 144-

1); and the New Mexico Court of Appeals' 2019 opinion, *State ex rel. Children, Youth &*

*Families Dep't v. Donna E.*, No. A-1-CA-37727, ("*Donna E. II*" decision), filed December

27, 2019.[1] (Doc. 144 at 2-12). Plaintiffs' Response fails to individually address

Defendants' enumerated facts as disputed or undisputed, as required by the Local

Rules of Civil Procedure. (Doc. 146 at 1-3); *see* D.N.M.LR-Civ. 56.1(b) ("Each fact in

dispute must be numbered, must refer with particularity to those portions of the record

upon which the non-movant relies, and must state the number of the movant's fact that

is disputed."). Instead, Plaintiffs argue the Court should adopt the facts as provided in

Plaintiffs' *Motion for Issue Preclusion*, (Doc. 132), the Fifth Judicial District Court's July

2015 Findings and Conclusions, (Doc. 146-1), and the Court of Appeals' 2017 opinion,

*Donna E. I*. (Doc. 146 at 1-2).

Plaintiffs' request that the Court adopt the facts as articulated in their *Motion For*

*Issue Preclusion* is unavailing. Plaintiffs fail to provide any record citations or authority in

support of their factual recitation in their *Motion For Issue Preclusion. See* (Doc. 132);

D.N.M.LR-Civ. 56.1(b) ("The facts must be numbered and *must refer with particularity to*

*those portions of the record upon which the movant relies*.") (emphasis added).

Plaintiffs' error in not citing to the record in support of their factual contentions, coupled

with their failure to specifically controvert Defendants' enumerated facts, creates an

---

1.       Available online: https://www.nmcourts.gov/Court-of-Appeals
/memorandum-opinions.aspx, (last accessed March 6, 2020).

arguable impasse.

Ordinarily, when a non-movant fails to specifically controvert the moving party's facts in a summary judgment motion, "[a]ll material facts set forth in the Memorandum will be deemed undisputed...." D.N.M.LR-Civ. 56(1)(b). As a result, the Court is left to rely solely on Defendants' recitation of the facts. However, because both Plaintiffs and Defendants cite extensively, and thus appear to rely on, the Court of Appeals' 2017 decision, *Donna E. I*, and the District Court's 2015 Findings and Conclusions, the Court will supplement Defendants' facts with these additional authorities. The Court finds this supplementation balances the otherwise extreme injustice to Plaintiffs, while still honoring Defendants' uncontroverted facts. *See* D.N.M.LR-Civ. 1.7 ("These rules may be waived by a Judge to avoid injustice.").

## III.    Undisputed Material Facts

This case arises out of ten years of litigation between the Everharts and CYFD over the custody of Mr. and Mrs. Everhart's two youngest children, S.E. Boy and S.E. Girl. In April 2010, S.E. Boy, a first grader at the time, told his father, Harley Everhart, and school principal, Gail Bryant, that his eighteen year old brother, Harley Jr., had raped him. *Donna E. I*, 2017-NMCA-088, ¶ 7. Several months before this disclosure, Ms. Bryant discussed S.E. Boy's sexually inappropriate behavior at school with his mother, Donna Everhart. *Id.* Mrs. Everhart admitted that she knew Harley Jr. and S.E. Boy watched pornography together when she and Mr. Everhart were away. *Id.* However, Mrs. Everhart was not receptive to Ms. Bryant's recommendations about how to stop the children's inappropriate activities. *Id.*

With a credible accusation of rape, Ms. Bryant informed CYFD and the Hobbs

Police Department. *Id.* ¶ 8. The police interviewed Harley Jr., and he confessed to

having penetrated S.E. Boy on two occasions a year and half prior. *Id.* Mr. Everhart

denied knowing about the abuse. *Id.* The police informed Mr. and Mrs. Everhart that

Harley Jr. could not have access to S.E. Girl and S.E. Boy. *Id.* A few weeks later, S.E.

Boy attended a Sexual Assault Nurse Examination ("SANE") in which S.E. Boy stated,

"we have taken pictures" of his "private parts" and "we print them upstairs." *Id.* ¶ 9.

Additionally, during the examination S.E. Boy began masturbating, and after Mrs.

Everhart asked him to stop, the examiner reported that Mrs. Everhart remarked, "isn't

he hung." *Id.* ¶ 9. Mrs. Everhart denies making these remarks. *See* District Court's 2018

Findings and Conclusions (Doc. 144-1 at 7-8).

    As a result of S.E. Boy's disclosures during the SANE examination, the Hobbs

Police Department obtained a search warrant for the Everharts' electronic devices. *Id.* ¶

10. When police arrived at the Everharts' home, Harley Jr. answered the door; S.E. Girl

and S.E. Boy were also at home. *Id.* Because Mr. and Mrs. Everhart failed to prevent

Harley Jr. from having access to S.E. Boy and two-year-old S.E. Girl, the children were

placed in CYFD's custody. District Court's 2015 Findings and Conclusions, ¶¶ 30-33.

On June 15, 2010, CYFD filed an abuse and neglect petition against Mr. and Mrs.

Everhart. *Donna E. I,* 2017-NMCA-088 ¶ 11. In August 2010, the Everharts entered

pleas of no contest with respect to all allegations in the petition. *Id.* As part of their

pleas, Mr. and Mrs. Everhart agreed to comply with a proposed disposition and

treatment plan provided by CYFD. *Id.*

        After S.E. Boy and S.E. Girl were placed in CYFD custody, a series of judicial

review hearings were held in 2010 and 2011 to assess Mr. and Mrs. Everhart's progress

on their treatment plans. *Id.* ¶¶ 12-20. At these hearings, the court found that Mr. and

Mrs. Everhart had made insufficient effort and progress to comply with their treatment

plans. *Id.* ¶¶ 13-14. In February 2011, the court ordered S.E. Boy placed in a residential

treatment facility because he required a higher level of care. *Id.* ¶ 14. Then, in May

2011, the court found Mr. and Mrs. Everhart had made "substantial progress" in their

treatment plans and reunification with S.E. Girl was in her best interest. *Id.* ¶ 15.

However, visits with S.E. Boy were suspended due to Mr. and Mrs. Everhart's behavior

during the visits. *Id.*

In June 2011, S.E. Girl began transitioning home with unsupervised overnight

weekend visits. *Id.* ¶ 16. At the July 2011 permanency hearing, a Hobbs Police

detective informed the court that images found on the Everharts' computer were

possibly child pornography. *Id.* ¶ 17. After hearing testimony from the detective, Mr.

Everhart, and a program director from the facility providing care to S.E. Boy, the court

ordered all contact between Mr. and Mrs. Everhart and S.E. Girl and S.E. Boy be

ceased. *Id.* At the next August 2011 hearing, the court found Mr. and Mrs. Everhart had

made sufficient effort to participate in their treatment plans but continued to be unaware

of the role they played in the harm that led to the decision to place S.E. Boy and S.E.

Girl into CYFD custody. *Id.* ¶ 18. The court therefore continued the no-contact order. *Id.*

In September 2011, CYFD filed a motion for termination of parental rights

indicating Mr. and Mrs. Everhart had made insufficient progress to allow their children to

be safely returned. *Id.* ¶ 20. Specifically, CYFD cited the Everharts' refusal to

acknowledge their responsibility to protect their children and their failure to do so. *Id.*

According to CYFD, due to the Everharts' lack of supervision, S.E. Boy suffered sexual

abuse and attempted to molest S.E. Girl. *Id.* CYFD also expressed concerns about possible child pornography on the Everharts' computer. *Id.* Mrs. Everhart filed a counterpetition arguing she had complied with all of CYFD's requirements and court orders and requested contact and visitation with S.E. Boy and S.E. Girl. *Id.*

The termination hearing was set for January 2012. *Id.* ¶ 21. However, CYFD moved to continue the hearing because of a training scheduled the same date. *Id.* The termination hearing was then reset for July 2012. *Id.* In the interim, the district court continued to hold permanency hearings. *Id.* ¶¶ 22-24. Specifically, in March 2012, the court ordered that the permanency plan would continue to be adoption, CYFD's legal custody would extend for an additional year, and the no-contact order would remain in effect. *Id.* ¶ 22.

Then, in June 2012, the Everharts filed a motion for summary judgment, seeking to set aside the motion for termination and the no-contact order. *Id.* ¶ 24. In their motion, the Everharts highlighted the Hobbs Police Department could not find "clear and convincing evidence" that the images on their home computer were child pornography. *Id.* Because the no-contact order and termination were predicated on the presence of child pornography, the Everharts alleged that both should be set aside. *Id.* It took CYFD thirty-three months to respond to the Everharts' motion for summary judgment. *Id.* ¶ 25.

In July 2012, the termination hearing was again continued at the request of CYFD because a key witness had experienced a "medical emergency." *Id.* ¶ 26. Instead, the district court used the allotted time to determine the Everharts' visitation rights. *Id.* The court heard from the Everharts' therapists, a program director at the visitation center who observed some visits between Mr. and Mrs. Everhart and S.E. Girl,

Mr. Everhart, a therapist who treated both S.E. Boy and S.E. Girl, and two providers from the residential treatment center where S.E. Boy had been residing. *Id.* Considering the testimony of these witnesses, the court continued the no-contact order. *Id.*

In September 2012, the termination hearing was again continued because the same key CYFD witness was unavailable. *Id.* ¶ 26, n.2. Then, at a status conference in February 2013, CYFD changed the permanency plan to reunification. *Id.* ¶ 27. The district court appointed a mediator—Ted Woodridge—to oversee reunification. *Id.* Mr. Woodridge was tasked with controlling family therapy timing and duration, parent-child visitation, contact with providers and services recommendations. *Id.* The court continued legal custody with CYFD for another year. *Id.*

In June 2013, the Everharts filed a motion arguing CYFD had not made a good faith effort towards reunification and the delay was causing emotional damage to the parent-child relationship. *Id.* ¶ 28. In August 2013, the court was scheduled to hear the Everharts' motion but continued the hearing for sixty days in order to allow more time for therapists to meet with the parties. *Id.* ¶ 29. The court held hearings in November 2013 and December 2013. *Id.* ¶¶ 29-30. In December 2013, the court changed course and found that adoption was now appropriate. *Id.* Specifically, the court held that while the Everharts had "complied with recommendations of the treatment plan…[the] causes and conditions of neglect and abuse maybe still exist, moreover, given the amount of time …[the] children [had] remained in custody, and the testimony given at [the December 2013] hearing, a change of plan to termination…appear[ed] to be in the best interest of…[the] children." *Id.* ¶ 30.

Between December 2013 and December 2014, the case was reassigned to four

different judges, during which time it appears no hearings were held. *Id.* ¶ 31; (Doc.

143-1, State Court Docket Sheet, at 17-18); District Court's 2015 Findings and

Conclusions, ¶ ¶ 121-124. In January 2015, a permanency hearing was held and CYFD

filed an amended motion for termination of parental rights. *Donna E. I*, 2017-NMCA-088,

¶ 32. In their motion to terminate parental rights, CYFD argued the Everharts' children

were abused and neglected and the conditions and causes of the abuse were unlikely

to change in the foreseeable future, despite reasonable efforts by CYFD. *Id.*

Specifically, CYFD alleged the Everharts failed to protect their children and failed to

provide adequate supervision. *Id.* In their countermotion, the Everharts requested

reunification with S.E. Girl and S.E. Boy, subject to physical custody of S.E. Boy for

services until he was ready to be released. *Id.* ¶ 33.

At the termination of parental rights hearing, held in March 2015, fourteen

witnesses testified, spanning the course of three days. *Id.* ¶ 34. The witnesses

consisted of treatment providers for Mr. and Mrs. Everhart and both children, including

psychologists, therapists and counselors. *Id.* Other witnesses included an expert

witness, Mr. Everhart, S.E. Girl's foster mother, a detective from the Hobbs Police

Department, and a CYFD social worker—Defendant Becker. *Id.* ¶ ¶ 34, 44. At the

hearing, Defendant Becker testified that although she thought Plaintiffs had followed

their treatment plan, termination was nevertheless appropriate. *Id.* ¶ 44. She indicated

that S.E. Girl had bonded with her foster parents and wanted a "family, stability and a

home." *Id.* Additionally, Defendant Becker testified that while she had no reason to

disbelieve the Everharts' therapist, who testified that Mr. and Mrs. Everhart had met all

of CYFD's requirements and made progress in their treatment goals, she was

concerned S.E. Boy could harm S.E. Girl. *Id.* Further, Defendant Becker believed that

termination was in the best interest of S.E. Girl because of the disintegration of the

parent-child relationship. *Id.* Defendant Becker admitted that she thought CYFD was

partially at fault for the disintegration because of "how long everything took." *Id.*

Defendant Becker blamed several people including herself for the delays, but she also

noted the Everharts' culpability, including problems with their marriage, their

minimization of S.E. Boy's issues and their role in creating his problems. *Id.*

In July 2015, the district court filed its Findings and Conclusions. *Id.* ¶¶ 45-49. In

its order, the court found the Everharts had abused and neglected S.E. Girl and S.E.

Boy. *Id.* ¶ 46. The court determined the Everharts' lack of contact with S.E. Boy was the

result of their failure to follow straightforward visitation rules and the deleterious effects

their visits had on his treatment. *Id.* While the court made several findings as to the

Everharts' behavior and complicity in the harm inflicted on S.E. Boy, it also

acknowledged the Everharts' participation in extensive therapy over the years. *Id.* ¶¶

46-47. Additionally, the court highlighted that CYFD never informed the Everharts'

therapists about the pornography-related disclosures, and the services offered to the

Everharts did not address the concerns raised by S.E. Boy's disclosures. *Id.* ¶ 46.

In addition, the court entered a number of other findings "chastising CYFD for not

fully and timely informing the court of [Mrs. Everhart's] statements and actions…[and

S.E. Boy's] disclosures and behaviors." *Id.* The court also noted that CYFD "utterly

failed to properly assess the cause and conditions that led to [the Everharts'] abuse of

[S.E. Boy]," that CYFD "never, with the directness commanded by the circumstance of

the case, required [the Everharts] to confront the conditions and causes of their abuse

of the [children], and work to resolve them." *Id.* ¶ 47. Ultimately, the district court terminated Mr. and Mrs. Everhart's parental rights to S.E. girl based on abandonment as defined by N.M.S.A. 1978 §32A-5-15(B)(3). *Id.* ¶ 49.

The Everharts appealed the District Court's 2015 Findings and Conclusions to the New Mexico Court of Appeals. *Donna E. I*, 2017-NMCA-088. In *Donne E. I*, the Court of Appeals reserved the order of termination on the basis of abandonment because the district court failed to enter any findings of fact or conclusions of law regarding the cause of the disintegration of Mr. and Mrs. Everhart's relationship with S.E. Girl, an essential element to termination by abandonment. *Id.* ¶ 51. In reaching this conclusion, the Court of Appeals found no evidence the Everharts "caused the delays that undoubtedly contributed to the disintegration of the parent-child relationship with [S.E. Girl]." *Id.* ¶ 59.

Instead, the Court of Appeals primarily faulted CYFD for disintegration of the relationship. *Id.* ¶¶ 58-59. The Court of Appeals noted the district court's 2012 no-contact order with S.E. Girl was continued despite the Hobbs police indicating that the images found on the Everharts' computer could not conclusively be identified as child pornography. *Id.* ¶ 60. Further, the Court of Appeals noted that the district court premised its continued non-visitation because a therapist testified that it would be confusing to S.E. Girl. *Id.* Additionally, the Court of Appeals noted that in 2013 the court appointed mediator, Mr. Woodridge, "completely failed to address visitation and contact" with S.E. Girl. *Id.* ¶ 61. Indeed, the Court of Appeals highlighted there was no evidence in the record that visitation with S.E. Girl was withheld because the Everharts acted improperly during visits. *Id.* ¶ 62.

The Court of Appeals was also troubled by CYFD's lack of clarity on what was required with respect to the Everharts' treatment therapy. *Id.* ¶ 64. Notwithstanding which party caused the disintegration of the parent-child relationship, the Court of Appeals remanded the case back to the Fifth Judicial District Court to determine custody of S.E. Girl based on her best interests. *Id.* ¶ 64. However, the Everharts continued to have parental rights over S.E. Boy, who could return home in the future. *Id.* ¶ 70.

During the pendency of the Court of Appeals' 2017 judgment, the district court continued to have periodic judicial review hearings and permanency hearings. *See* (Doc. 143-1, State Court Docket Sheet, at 23-29). After remand, these hearings continued, and in April 2018, the district court held a two-day hearing on custody of S.E. Girl based on her best interests. (Doc. 143-1, State Court Docket Sheet, at 32); (Doc. 144-1, District Court's 2018 Findings and Conclusions, at 1). In coming to its determination on the best interests of S.E. Girl, the district court elicited testimony, facts, and evidence demonstrating that "extraordinary circumstances" were present to rebut the presumption under New Mexico law that it was in a child's best interests to be raised by her biological parents. (Doc. 144-1 at 2-45). Specifically, the district court found there was clear and convincing evidence of the Everharts' "serious parental inadequacy," and S.E. Girl's contact with the Everharts had been so minimal that she had significantly bonded with her foster parents. *Id.* at 2-43. Given that both requirements of "extraordinary circumstance" had been shown with clear and convincing evidence, the court found it was in S.E. Girl's best interests to remain in CYFD's custody and in the placement of her current foster family. *Id.*

The Everharts appealed this judgment to the New Mexico Court of Appeals. *Donna E. II*, No. A-1-CA-37727, ¶ 1. The Everharts advanced several due process arguments, similar to those raised before this Court, challenging the District Court's 2018 Findings and Conclusions. *Id.* ¶ 4. In December 2019, the Court of Appeals rejected the Everharts' arguments and affirmed the district court's determination. *Id.* ¶ ¶ 4-21. The Everharts appealed the Court of Appeal's judgment to the New Mexico Supreme Court and are currently waiting for the New Mexico Supreme Court to grant a writ of certiorari, No. A-1-CA-37727. (Doc. 145 at 2); (Doc. 151-1).

## IV.   Analysis

In Defendants' Motion, they assert five arguments in support of summary judgment. First, Defendants contend the Rooker-Feldman Doctrine bars Plaintiffs' claims. (Doc. 144 at 12-14). Second, Defendants argue Plaintiffs' claims should be dismissed based on issue and claim preclusion. *Id.* at 14-20. Third, Defendants assert that both Defendants Becker and Valderaz are entitled to summary judgment based on qualified immunity. *Id.* at 20-22. Fourth, Defendants argue Plaintiffs failed to establish a CYFD policy or custom that caused Plaintiffs' injuries, as required by 42 U.S.C. § 1983. *Id.* at 22-23. Lastly, Defendants allege Plaintiffs lack standing to bring any action on behalf of S.E. Boy or S.E. Girl. *Id.* at 23-24. The Court will address each of these arguments in turn. Additionally, because Plaintiffs similarly assert issue preclusion as a basis for summary judgment, the Court will also address their *Motion For Issue Preclusion*, (Doc. 132), below.

### a.   *Defendants' Arguments for Application of the Rooker-Feldman Doctrine, Claim Preclusion, and Issue Preclusion*

Defendants first argue that Plaintiffs' claims should be barred by the Rocker-

Feldman-Doctrine, claim preclusion, and issue preclusion. (Doc. 144 at 12-20). In response, Plaintiffs contend "[t]he Rooker-Feldman doctrine is not applicable to the Plaintiffs' Amended Complaint because the State-Courts for the State of New Mexico did not adjudicate the Plaintiffs claims of a violation of due process, substantive due process, familial association, and illegal searches and seizures." (Doc. 146 at 8). Similarly, Plaintiffs allege the doctrines of claim and issue preclusion do not bar this litigation because "[t]he claims of Constitutional violations of due process, substantive due process, and familial relationships and searches and seizures were never raised and were specifically not addressed by the [New Mexico state courts]." *Id.* at 10.

When evaluating the preclusive effect of state court judgments, federal courts look to that state's law. *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Therefore, the Court will look to New Mexico courts' treatment of preclusion, which is generally consistent with federal standards. *See Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57. Each of these doctrines mandate that the underlying state litigation result in a final judgment before application of the doctrine. *See Tast v. Dean*, 182 F. App'x 748, 749 (10th Cir. 2006) (declining to rule on the application of the Rooker-Feldman doctrine because "the New Mexico case had not come to a final judgment") (unpublished); *Kirby v. Guardian Life Ins. Co. of Am. (Kirby II)*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 124 (stating that in order to assert claim preclusion a party must first establish there was a final judgment in the earlier action); *Ullrich v. Blanchard*, 2007-NMCA-145, ¶ 19, 142 N.M. 835, 839 (stating that for issue preclusion to apply four elements including "the issue was necessarily determined" must be satisfied) (quoting *City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 10, 134 N.M. 216, 220 (internal quotation marks omitted).

15

Here, the state court litigation Defendants rely on has not achieved a final judgment. Specifically, Plaintiffs are still awaiting approval of their writ of certiorari, No. A-1-CA-37727, by the New Mexico Supreme Court. (Doc. 145 at 2); (Doc. 151-1). Therefore, the Court declines to rule on Defendants' arguments in favor of application of the Rooker-Feldman Doctrine, claim preclusion, and issue preclusion.

### b. *Plaintiffs' Motion for Issue Preclusion*

In their *Motion For Issue Preclusion*, Plaintiffs recite a long list of "issues" which they assert Defendants should be foreclosed from arguing based on issue preclusion. (Doc. 132 at 1-14). In their motion, Plaintiffs fail to provide any record citations or legal authority in support of their factual recitation. (Doc. 132); *see* (Doc. 143 at 2) (arguing Plaintiffs' *Motion For Issue Preclusion* "makes no attempt whatsoever to create a record on which the Court could evaluate the issue presented."). Additionally, Defendants note that under New Mexico law, the party asserting issue preclusion must show that the adversely affected party was a party to the prior litigation. *Id.* at 4. Specifically, Defendants assert the adversely affected parties in this case, Defendants Becker and Valderaz, were not parties to the underlying state case. *Id.* at 7. Thus, Defendants argue Plaintiffs' *Motion For Issue Preclusion* fails on the first element. *Id.*

Under New Mexico law, parties asserting issue preclusion must demonstrate four elements: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined." *City of Sunland Park*, 2003-NMCA-098, ¶ 10. The same issue of finality that plagued Defendants' arguments applies here: the underlying state litigation is not

16

final given Plaintiffs' pending writ of certiorari, No. A-1-CA-37727. (Doc. 145 at 2); (Doc. 151-1). Therefore, like Defendants, Plaintiffs also fail to fulfill the fourth requirement— "the issue was necessarily determined." *City of Sunland Park*, 2003-NMCA-098, ¶ 10.

In addition, Plaintiffs fail to meet the first requirement—the parties in the current action are the same or were in privity with the parties in the prior action. Here, Defendants Becker and Valderaz were not parties to the underlying state action. *Supra*, Section III. Additionally, they were not in privity with CYFD in the prior action. See *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 4, 139 N.M. 637, 640, *as corrected* (June 29, 2006) ("[P]rivity does not exist where an initial lawsuit is brought against an employer and a second lawsuit is then brought against an employee acting in his or her individual capacity.") (citing *Morgan v. City of Rawlins*, 792 F.2d 975, 980 (10th Cir.1986)).

Accordingly, because the underlying state action is still pending, and because Defendants Becker and Valderaz were not parties or in privity with CYFD in the underlying state action, the Court **RECOMMENDS** that Plaintiffs' *Motion For Claim Preclusion*, (Doc. 132), be **DENIED**.

### c. *Qualified Immunity*

Next, Defendants argue both Defendants Becker and Valderaz are entitled to summary judgment based on qualified immunity. Specifically, Defendants contend there was no clearly established law that would have put them on notice that their actions were unlawful. (Doc. 144 at 21-22). In their Response, Plaintiffs assert that Defendant Becker violated the clearly established law on the right to family association, procedural due process, and the Fourth Amendment right to be free of unlawful search and seizure. (Doc. 145 at 1); (Doc. 146 at 3-5). Notably, in their Response, Plaintiffs fail to discuss

any conduct taken by Defendant Valderaz that violated their constitutional rights. (Doc. 145); (Doc. 146). Plaintiffs nonetheless assert that an award of qualified immunity is inappropriate for both Defendants Becker and Valderaz.

Under Section 1983, state officials sued in their individual capacity for damages may raise the affirmative defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity also shields [officials] who have 'reasonable, but mistaken beliefs,' and operates to protect [officials] from the sometimes 'hazy border[s]' of the law." *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1251 (D.N.M. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)) (alterations made).

Once a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating that both (1) the official violated a federal constitutional or statutory right; and (2) the right violated was clearly established at the time of the official's conduct. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017). The Tenth Circuit has described this test as a "heavy two-part burden," established to protect "all but the plainly incompetent or those who knowingly violate the law." *Holmes,* 830 F.3d at 1134 (internal citations and quotations omitted). A court has discretion to address the requirements of a qualified immunity defense in any order. *Pearson*, 555 U.S. at 236. The plaintiff's failure to establish either of the two requirements is fatal to his claim. *Id.*

In determining whether the plaintiff has satisfied the two-pronged qualified-

18

immunity showing, the court ordinarily accepts the plaintiff's version of the facts. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, because the summary judgment stage is "beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, if the non-movant proves there is a factual dispute involving an issue "on which qualified immunity turns," summary judgment on the basis of qualified immunity is "inappropriate." *Harapat*, 676 F. Supp. 2d at 1266 (citing *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988)).

### i. The Right to Familial Association

In Defendants' Motion, they contend Defendants Becker and Valderaz are entitled to qualified immunity on Plaintiffs' familial association claim. (Doc. 144 at 20-22). Specifically, Defendants assert there was no clearly established right at the time S.E. Girl and S.E. Boy were removed from Plaintiffs' home that would have put Defendants Becker and Valderaz on notice that their actions were unlawful. *Id.* at 22. In their Second Amended Complaint, Plaintiffs allege Defendants Becker and Valderaz violated Plaintiffs' right to familial association based on the following: (1) they failed to reunify Plaintiffs with their children in a timely manner and without just cause; (2) they did not affirmatively protect the familial relationship between Plaintiffs and their children; and (3) they intentionally and knowingly directed conduct adverse to the family

relationship. (Doc. 109 at 22, ¶¶ 121-124). The Court will address each of Plaintiffs'
arguments in turn.

The right to familial association has long been recognized as a substantive due
process right, arising from the freedom of intimate association. *Griffin v. Strong*, 983
F.2d 1544, 1547 (10th Cir. 1993). The Tenth Circuit has found that "[t]he government's
'forced separation of parent from child, even for a short time, represents a serious
impingement' on a parent's right to familial association." *Thomas v. Kaven*, 765 F.3d
1183, 1195 (10th Cir. 2014) (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1199
(10th Cir. 2010)). However, the right is not absolute and "must be weighed against the
state's interest in protecting a child's health and safety in order to determine whether
state actors unduly burdened that right in a given case." *Thomas*, 765 F.3d at 1196.

In the Tenth Circuit, a court must consider if the right was sufficiently clear so that
a reasonable government employee in the defendant's shoes would understand that
what she did violated that right. *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d
1323, 1327 (10th Cir. 2007). Ordinarily, to prove a clearly established right, "the plaintiff
must point to a Supreme Court or Tenth Circuit decision on point or to the clearly
established weight of authority from other courts that have found the law to be as the
plaintiff maintains." *Callahan v. United Gov't of Wyandotte Ctv.*, 806 F.3d 1022, 1027
(10th Cir. 2015) (internal citations omitted). Yet, the Tenth Circuit has also found that
"does not mean that we must have previously decided a case that is materially factually
similar or identical to the present case; instead, '[t]he contours of the right must be
sufficiently clear that a reasonable official would understand that what he is doing
violates that right.'" *Jensen*, 603 F.3d at 1197 (quoting *Anderson v. Creighton*, 483 U.S.

20

635, 640 (1987)). Accordingly, the assessment of whether the right has been clearly

established "depends substantially upon the level of generality at which the relevant

legal rule is to be identified." *Anderson*, 483 U.S. at 639 (internal quotation marks

omitted).

In assessing the level of specificity required, the Tenth Circuit has applied a

sliding scale to determine when the law is clearly established. *See Casey v. City of Fed.*

*Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) ("The more obviously egregious the

conduct in light of prevailing constitutional principles, the less specificity is required from

prior case law to clearly establish the violation."). Furthermore, "general statements of

the law are not inherently incapable of giving fair and clear warning ...." *Hope v. Pelzer*,

536 U.S. 730, 741 (2002). In fact, the United States Supreme Court recently reaffirmed

"the clearly established law must be 'particularized' to the facts of the case." *White v.*

*Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson*, 483 U.S. at 640). "The question is

not whether a 'broad general proposition' was clearly established," but "'whether the

violative nature of particular conduct [was] clearly established.'" *Halley v. Huckaby*, 902

F.3d 1136, 1144 (10th Cir. 2018) (quoting *Redmond v. Crowther*, 882 F.3d 927, 935

(10th Cir.2018)). "Otherwise, 'plaintiffs would be able to convert the rule of qualified

immunity into a rule of virtually unqualified liability simply by alleging violation of

extremely abstract rights.'" *White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U.S. at

639).

Here, Plaintiffs cite to several cases that stand for the general proposition that

familial association is a recognized substantive due process right. (Doc. 146 at 4-5)

(citing *Jensen*, 603 F.3d at 1196-1197; *Thomas*, 765 F.3d. at 1183; *Malik v. Arapahoe*

*Cnty. Dep't of Soc. Servs.*, 191 F. 3d 1306, 1314 (10th Cir. 1999)).  For example, in *Malik* the Tenth Circuit upheld the district court's denial of qualified immunity where there was a genuine issue of material fact concerning whether the defendant police officer collaborated with the defendant social worker in procuring a judicial ex parte order, which allowed for temporary custody of the plaintiff's child, based on omissions and misrepresentations. *Malik*, 191 F.3d at 1313-14. The Tenth Circuit stated "it was clearly established law that [a] government officials' procurement through distortion, misrepresentation and omission…of a court order to seize a child is a violation of the Fourth Amendment." *Id.* at 1316 (quoting *Malik v. Arapahoe Cty. Dep't of Soc. Servs.*, 987 F. Supp. 868, 882 (D. Colo. 1997)) (internal citations omitted).

Similarly, in *Jensen*, the Tenth Circuit held that parents did not have a clearly established constitutional right to direct a child's medical care; they denied the plaintiffs' procedural due process claims because the defendant's allegedly false testimony did not have a "degenerative effect" on the court proceedings; and they found the plaintiffs failed to show the defendants imposed an undue burden on their parent-child relationship. As a result, the Tenth Circuit concluded the plaintiffs failed to show the defendants violated their associational rights. 603 F.3d 1182, 1197-1201 (10th Cir. 2010).

The other cases cited by Plaintiffs suffer from the same deficiencies, as they too fail to put a reasonable official in Defendants' position on notice that her actions constitute a constitutional violation. *See, e.g., Thomas*, 765 F.3d at 1197 (finding dismissal of the plaintiff's claim for inference with familial association improper where the plaintiff had pled sufficient facts alleging the treating physicians' requested medical

hold based on plaintiffs' daughter's expression of suicidal thoughts was insufficiently emergent); *Zane v. Kramer*, 195 F. Supp. 3d 1243, 1255-56 (W.D. Okla. 2016), *subsequently aff'd sub nom. Hedger v. Kramer*, 726 F. App'x 677, 684-85 (10th Cir. 2018) (unpublished) (affirming the district court's holding that there was adequate reasonable suspicion to justify seizure of the plaintiffs' older child based on the presence of significant physical injuries and later death of the plaintiffs' younger child, despite the defendant case worker's failure to inform the court that physicians did not believe the plaintiffs had inflicted harm on the younger child).

Indeed, several of the Tenth Circuit cases cited by Plaintiffs have no factual similarities to this case. *See Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1029-30 (10th Cir. 2015) (finding qualified immunity applicable to defendant police officers where there was no clearly established law against arresting an entire unit under the circumstances of the case); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) (holding the decision to deploy the SWAT team was not an unreasonable seizure, and the leader of the SWAT team was not entitled to qualified immunity for alleged excessive force or for alleged violation of the knock-and-announce rule and for use of foul and abusive language).

Plaintiffs have not asserted a constitutional right to direct their children's medical care; there is no evidence that Defendants Becker or Valderaz provided intentionally false testimony at any of the court proceedings; and the parties do not appear to contest whether the removal of Plaintiffs' children constituted an undue burden. As a result, none of the cases cited by Plaintiffs provide the level of specificity required of the circumstances, nor do they support their particularized allegations. *See White*, 137 S.

Ct. at 552 ("clearly established law must be 'particularized' to the facts of the case.")

(quoting *Anderson*, 483 U.S. at 640). Indeed, the cases Plaintiffs rely on fail to

demonstrate with sufficient clarity that a reasonable official in Defendants' position

would understand that she had an affirmative duty to protect the familial relationship and

reunify in a timely manner under the circumstances presented in this case.

In addition, Plaintiffs have failed to present any factual evidence from the record

to substantiate their allegation that Defendants intentionally directed conduct to damage

the familial relationship. *See Harvey Barnett Inc.*, 338 F.3d at 1129 (in summary

judgment a non-moving party cannot rest on ignorance of the facts, speculation, or

unsubstantiated conclusory allegations). While Defendant Becker admitted she bore

some responsibility for the timeliness of proceedings, Plaintiffs have not provided

evidence that Defendants Becker or Valderaz committed perjury or intentionally delayed

proceedings for the sole intent of disrupting the parent-child relationship.

In conclusion, while Plaintiffs have pointed to law that generally protects the right

to familial association, they have failed to provide "clearly established law…

particularized to the facts of [this] case." *White*, 137 S. Ct. at 552 (2017) (internal

citations and quotation marks omitted) (alterations made). Even considering the facts in

the light most favorable to Plaintiffs, this Court cannot find it is clearly established law

that unintentional passivity on the part of a government official's response to child

custody proceedings constitutes a violation of the right to familial association.

Furthermore, Plaintiffs have not provided a Supreme Court or Tenth Circuit decision that

supports this proposition. *Callahan,* 806 F.3d at 1027 (to prove a clearly established

right, "the plaintiff must point to a Supreme Court or Tenth Circuit decision on point or to

the clearly established weight of authority from other courts that have found the law to be as the plaintiff maintains.") (internal citations omitted). Simply put, while Defendant Becker may not have made a full-throated effort on every occasion to expediate S.E. Girl's custody case, this inaction does not fulfil the high burden on Plaintiffs to show a clearly established right.

As such, the Court finds Plaintiffs failed to provide clearly established law to support their claim that Defendants violated their right to familial association. For these reasons, the Court **RECOMMENDS** that summary judgment for Defendants be **GRANTED** on Plaintiffs' substantive due process claims.

### ii. The Right to Procedural Due Process

Next, Defendants argue they are entitled to qualified immunity on Plaintiffs' procedural due process claims. Specifically, Defendants contend Plaintiffs failed to "articulate what specific actions Defendant Becker and Defendant Valderaz took that violated their federal constitutional or statutory rights." (Doc. 152 at 10). In effect, they assert Plaintiffs have failed to fulfill the requirements of the first prong of qualified immunity: Defendants violated Plaintiffs' procedural due process rights. (Doc. 152 at 9-10). In their Second Amended Complaint, Plaintiffs allege Defendants violated their procedural due process rights with the following four actions and inactions: (1) Plaintiffs were not afforded timely hearings by CYFD; (2) Defendant Becker failed to prevent long periods of absence between Plaintiffs and their children as required by the New Mexico Children's Code; (3) Plaintiffs were not afforded timely and workable reunification plans to prevent long periods of absence with their children as required by the New Mexico Children's Code; and (4) Plaintiffs completed all treatment plans for reunification but

CYFD and Defendant Becker continued to prevent Plaintiffs from visiting their children. (Doc. 109 at 21, ¶¶ 114-116, 118, 119). The Court will evaluate each of Defendants' alleged procedural due process violations in turn, evaluating whether each violation is sufficiently supported to overcome the defense of qualified immunity.

"Under the Fourteenth Amendment to the United States Constitution, parents have a protected liberty interest in the care, custody and control of their children." *Gomes v. Wood*, 451 F.3d 1122, 1127 (10th Cir. 2006) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "As a result, state officials may not remove children from the home, through either temporary seizures or the permanent termination of parental rights, without providing due process of law." *Id.* at 1127 (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)). Yet, parents' liberty interest is not absolute, as states have an "interest in preserving and promoting children's welfare…including a traditional and transcendent interest" in protecting children from abuse. *Id.* at 1127-1128 (internal citations and quotation marks omitted).

Consequently, when a state seeks to remove a child from his or her parents' custody, due process requires that the parents receive prior notice and a hearing. *Id.* (citing *Spielman v. Hildebrand*, 873 F.2d 1377, 1385 (10th Cir.1989)). "Although the exact procedures required by the Constitution depend on the circumstances of a given case, '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Jensen*, 603 F.3d at 1200 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks and brackets omitted). In addition, to overcome a qualified immunity defense asserted in response to a procedural due process claim, "a plaintiff must show that the defendant was more

than simply negligent." *Brown v. Montoya*, 662 F.3d 1152, 1170 (10th Cir. 2011) (citing *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986)) (suggesting that the court would require more than simple negligence but declining to resolve which particular state of mind is required for a procedural due process violation).

First, Plaintiffs contend their procedural due process rights were violated by Defendants' failure to provide them timely hearings, depriving them of a meaningful opportunity to be heard. While Plaintiffs' briefing does not highlight specific actions taken by Defendants Becker or Valderaz in support of their argument, at Defendant Becker's deposition Plaintiffs' counsel questioned her about the three years it took for CYFD to respond to Plaintiffs' motion for summary judgment in the state district court. (Doc. 146-6 at 4, deposition pages 49-50). In response, Defendant Becker stated she could not explain the delay because "as far as legal…that was done by our attorneys, and I am not an attorney." *Id.*

However, during this three-year time period when Plaintiffs waited for CYFD's response, the state district court continued to convene numerous hearings. *See supra*, Section III; (Doc. 143-1, State Court Docket Sheet, at 14-19). During these hearings, Plaintiffs could have addressed CYFD's failure to respond to their motion for summary judgment, or complained the delays were violating their constitutional right to be heard. In light of Plaintiffs' failure to provide any evidence of specific actions, or inactions, taken by Defendants Becker or Valderaz that denied them a meaningful opportunity to be heard, and given the state district court's numerous hearings, the Court finds the allegation that Plaintiffs were deprived of their procedural due process rights unpersuasive.

Second, Plaintiffs contend Defendant Becker failed to prevent long periods of absence between themselves and their children, violating their right to procedural due process. In support of this allegation, Plaintiffs cite to Defendant Becker's testimony, where she admitted "she thought CYFD was partly at fault for the disintegration because of how long everything took." *Donna E. I*, 2017-NMCA-088, ¶ 44. In viewing the facts in the light most favorable to Plaintiffs, Defendant Becker's testimony indicates that she attributed some fault to her own inaction. However, absent any further allegation of misconduct, simple negligence or passivity is insufficient to defeat qualified immunity on a procedural due process claim. *See Brown*, 662 F.3d at 1170.

Next, Plaintiffs allege Defendants violated their procedural due process rights by failing to provide and honor timely and workable reunification plans. Plaintiffs have not provided evidence indicating Defendant Becker or Defendant Valderaz were responsible for providing Plaintiffs their specific therapy requirements and reunification plans. More pointedly, Plaintiffs have not cited to a section in the New Mexico Children's Code which endows Defendant Becker and Defendant Valderaz with the affirmative duty to notify Plaintiffs of these requirements. To the contrary, the Court of Appeals noted that a court appointed mediator—Mr. Woodridge—was responsible for the tasks of "controlling the various aspects of family therapy intervention including…parent and child visitation," a responsibility which he "completely failed." *Donna E. I*, 2017-NMCA-088, ¶ 61.

Even assuming it was Defendants Becker and Valderaz's responsibility to ensure Plaintiffs understood their therapy goals and the areas they needed to address in order to be reunited with their children, Plaintiffs have not proven this inaction amounted to

anything more than negligence. Again, Defendants' purported negligence in these tasks is insufficient to constitute a violation of procedural due process. *See Daniels*, 474 U.S. at 333-36. As such, Plaintiffs' assertion that Defendants' inaction amounted to a procedural due process violation is unsupported.

In short, Plaintiffs have not provided evidence that Defendants intentionally violated their procedural due process rights. Even when viewing the facts in the light most favorable to Plaintiffs, that inaction and delay occurred in the state court proceedings and therapy requirements were unclear, simple negligence is insufficient to establish a violation of Plaintiffs' procedural due process rights. Accordingly, the Court **RECOMMENDS** summary judgment be **GRANTED** for Defendants on Plaintiffs' procedural due process claims.

### iii.  The Fourth Amendment Right to be Free from Unlawful Seizure

Next, Defendants allege Plaintiffs failed to articulate or point to any evidence showing what individual actions Defendants Becker or Valderaz took that violated their federal constitutional rights. (Doc. 152 at 10). In their Second Amended Complaint, Plaintiffs allege Defendants violated their Fourth Amendment protections against unlawful search and seizure[2] with the followings acts: Defendants Becker and Valerdaz seized Plaintiffs' children, revoked their reunification plan, prevented any type of familial relationship, and have maintained custody of Plaintiffs' children based on false assumptions Plaintiffs had pornography on their computer and were showing

---

2.      Within this section of their Complaint, Plaintiffs also assert a number of due process violations. These assertions are recitations of Plaintiffs prior procedural and substantive due process allegations, and as such, they have been addressed in the previous sections. *Supra*, Section (IV)(c)(i)-(ii).

pornography to their children. (Doc. 109 at 23-25, ¶¶ 130-131). Further, Plaintiffs allege

Defendants Becker and Valderaz knew that "at the time of termination of the

reunification plan in 2011…the only finding against [Plaintiffs] was failure to supervise

and protect the minor Children from [Harley Jr.]," and they knew that Harley Jr. "posed

no threat to the minor Children as he was incarcerated or resided in [Ohio]." (Doc. 109

at 25, ¶¶ 137-138).

 The Fourth Amendment protects persons from "unreasonable ... seizures." U.S.

Const. Amend. IV. "'The key principle of the Fourth Amendment is reasonableness....' "

*Halley v. Florida v. Royer*, 460 U.S. 491, 514 (1983) (quoting *Michigan v. Summers*, 452

U.S. 692, 700, n.12 (1981)) (internal brackets omitted). Even in the context of child

custody, "a seizure must be supported by an arrest warrant, probable cause, or

reasonable suspicion to detain and question an individual." *Halley v. Huckaby*, 902 F.3d

1136, 1145 (10th Cir. 2018) (internal citations omitted). In custody cases in which the

Tenth Circuit found a Fourth Amendment seizure violation, the seizure was performed

without a court order or sufficiently exigent circumstances, or the court order was

obtained by the defendants' misrepresentation of facts. *See, e.g., Malik*, 191 F.3d at

1316 (it was clearly established that officers violated the Fourth Amendment by

misrepresenting facts in order to obtain judicial authorization to seize the child); *Roska*

*ex rel. Roska v. Peterson*, 328 F.3d 1230, 1244 (10th Cir. 2003) (holding the defendant

social workers violated the Fourth Amendment when they seized a child from his home

without judicial authorization or exigent circumstances).

 Contrary to other cases in which a Fourth Amendment seizure was found, in this

case the revocation of the reunification plan and seizure of S.E. Girl was done pursuant

to a court order. *Donna E. I*, 2017-NMCA-088, ¶ 16-20. The initial court order was
based on testimony from a Hobbs Police officer that images on Plaintiffs' computer may
have been child pornography. *Id*. ¶ 17. While Plaintiffs describe this as "false
assumptions and innuendo," the state district court had no reason to question the
veracity of the police officer's testimony or the very real possibility the images were child
pornography. In addition to the Hobbs police officer's testimony, there was previously
considered evidence from S.E. Boy's sexual assault examine in which S.E. Boy
indicated his parents took pictures of his "private parts." District Court's 2018 Findings
and Conclusions (Doc. 144-1, at 7, ¶¶ (II)(A)(iii)(7)).

While a 2012 report from the Hobbs Police Department indicated the images
could not conclusively be identified as child pornography, the state district court did not
have this information available at the time of its 2011 order. *Donna E. I*, 2017-NMCA-
088, ¶ 25. Furthermore, there is no evidence that testimony provided at the July 2011
hearing was false or untruthful, and Plaintiffs have not put forth evidence that
Defendants Becker or Valerdaz presented false or inaccurate information at this
hearing. In short, this Court has no reason to question the reasonableness of the July
2011 court order revoking Plaintiffs' contact rights with S.E. Girl or revoking their
reunification plan. From the record, the July 2011 order seems well supported by the
evidence that was before the state court judge at the time.

Even after the initial July 2011 court order, Plaintiffs' children continued to be
held in CYFD's custody pursuant to court orders. This Court has no reason to question
the reasonableness of the subsequent court orders, as they appear to be generally
supported by the testimony of therapists, psychologists, social workers, and others who

encountered Plaintiffs or their children. *See Donna E. I*, 2017-NMCA-088, ¶¶ 11-50;

(District Court's 2018 Findings and Conclusions, Doc. 144-1). Furthermore, Plaintiffs

have put forth no evidence that Defendants Becker or Valerdaz presented false or

inaccurate information at any of the subsequent hearings. Accordingly, the Court

**RECOMMENDS** that summary judgment for Defendants be **GRANTED** on Plaintiffs'

Fourth Amendment claims.

### d. Claims Against CYFD

Finally, Defendants argue CYFD should be granted summary judgment because

Plaintiffs failed to establish a "policy or custom" that caused the alleged constitutional

deprivation. (Doc. 144 at 22-23). In response, Plaintiffs contend "the official policy or

custom over the ten[-]year period of withholding [Plaintiffs' children] from the Parents

shows that the government[']s inaction was a result of deliberate indifference." (Doc.

146 at 5). In their Reply, Defendants again reiterate that Plaintiffs failed to demonstrate

any underlying constitutional violation, a custom or policy, or a causal connection

between the alleged wrongdoing and CYFD's policy. (Doc. 152 at 12). As a result,

Defendants request the Court grant summary judgment for CYFD on Plaintiffs' Section

1983 claims. *Id.*

For a municipality to be held liable under Section 1983, the plaintiff bears the

burden of establishing: "1) the existence of a municipal policy or custom and 2) a direct

causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450

F.3d 1215, 1218 (10th Cir. 2006). When the plaintiff alleges the municipality's conduct

arises from inaction or "a failure to act," the plaintiff must demonstrate "the municipality's

inaction was the result of deliberate indifference to the rights of its inhabitants." *Id.*

32

(internal quotations omitted). In addition, a "municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Id.*

Here, Plaintiffs' claims against CYFD fail because the Court has already recommended that no underlying constitutional violation be found against CYFD employees Defendants Becker and Valderaz. *See* (*Supra,* Section IV(c)(i)-(iii)). In addition, Plaintiffs have presented no evidence that any other CYFD employee committed a constitutional violation. Notwithstanding this recommendation, Plaintiffs' claims are further plagued by the lack of evidence supporting a "custom or policy" for which CYFD may be held responsible. Indeed, Plaintiffs contend the withholding of their children resulted in the creation of a custom or policy, which demonstrates "deliberate indifference." (Doc. 146 at 5). In support of their one-paragraph argument that CYFD is not entitled to summary judgment, Plaintiffs' rely on a single case: *Martinez v. Uphoff*, 265 F.3d 1130 (10th Cir. 2001).

In *Martinez*, the Tenth Circuit affirmed the district court's order granting qualified immunity for the defendants, the director and other official personnel employed by the Department of Corrections. *Id.* at 1135. Specifically, *Martinez* involved the death of a prison guard by three inmates who attempted to escape. *Id.* at 1132. In denying the plaintiff's substantive due process claim, the Tenth Circuit found "[the] plaintiff failed to provide facts which would tie the institutional deficiencies at the prison to the death of [the decedent]." *Id.* at 1135. The Tenth Circuit further opined that "inaction in the face of known dangers or risks was not enough to satisfy the danger-creation theory's conscience shocking standard." *Id.* (internal quotations omitted).

It is unclear from Plaintiffs' briefing the exact contours in which they hope to use *Martinez* as persuasive or binding authority in the present case. Neither *Martinez*, nor the bald assertions Plaintiffs make in their briefing, can be understood as demonstrating "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) (affirming summary judgment for the municipal defendant because although the plaintiff demonstrated "few incidents of discrimination … [the plaintiff] failed to establish a genuine dispute of material fact about whether the [municipal defendant] had a custom of discriminatory employment practices."). Absent a policy or custom for the Court to evaluate, or an alleged causal connection, the Court **RECOMMENDS** that Defendant CYFD be **GRANTED** summary judgment on Plaintiffs' Section 1983 claims.

## V.    Conclusion

Consistent with the foregoing, the Court **RECOMMENDS** that Plaintiffs' *Motion For Issue Preclusion*, (Doc. 132), be **DENIED**, and Defendants' *Motion for Summary Judgment and Memorandum in Support*, (Doc. 144), be **GRANTED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DONNA EVERHART, et al.,

      Plaintiffs,

v.                                                CV No. 17-1134 RB/CG

JOHN DOMINGUEZ, et al.,

      Defendants.

## ORDER ADOPTING CHIEF MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Chief Magistrate Judge Carmen E. Garza's

Proposed Findings and Recommended Disposition (PFRD), filed March 10, 2020 (Doc. 154);

Plaintiffs Donna and Harley Everharts' Answer and Objection to Proposed Findings and

Recommended Disposition (the Objections), filed April 1, 2020 (Doc. 157); and Defendants New

Mexico Children Youth and Family Services (CYFD), Dana Becker, and Evgenia Valderaz's

Response to Plaintiffs' Objection to Proposed Findings and Recommended Disposition (the

Response), filed April 15, 2020 (Doc. 158). In the PFRD, Judge Garza recommended the

Everharts' Motion for Issue Preclusion (Doc. 132) be denied, and Defendants' Motion for

Summary Judgment and Memorandum in Support, (Doc. 144) be granted. (Doc. 154 at 1–2.)

The parties were informed that objections to the Chief Magistrate Judge's opinion were

due within 14 days of service of the PFRD. (*Id.* at 34.) The Everharts timely objected to the PFRD,

after being granted an extension, on April 1, 2020. (Doc. 157.) Defendants did not object to the

PFRD, but timely responded to the Everharts' objections. (Doc. 158.) The Court has conducted a

*de novo* review of the Everharts' Motion for Issue Preclusion (Doc. 132), Defendants' Motion for

Summary Judgment (Doc. 144), the PFRD (Doc. 154), the Objections (Doc. 157), and Defendants'

EXHIBIT 2

Response (Doc. 158). The Court will overrule the Objections, adopt the PFRD, deny the Everharts'
Motion for Issue Preclusion, grant Defendants' Motion for Summary Judgment, and dismiss
Defendants CYFD, Evgenia Valderaz, and Dana Becker with prejudice.

## I.      Factual Background & Procedural History

This case stems from an April 2010 rape allegation from the Everharts' youngest son, S.E.
Boy, against his older brother, Harley Jr. (Doc. 154 at 5.) After investigating S.E. Boy's
accusations, police obtained a search warrant for the Everharts' electronic devices. (*Id.* at 6.) When
executing the warrant, police discovered that Harley Jr. had access to both S.E. Boy and his
younger sister, S.E. Girl, in direct contravention of police orders. (*Id.*) As a result, the children
were removed from the Everharts' home and placed in CYFD custody. (*Id.*)

Following the children's removal, the New Mexico Fifth Judicial District Court held a
series of review hearings to determine the Everharts' progress on their treatment plan to be reunited
with their children. (Doc. 154 at 6–7.) At a July 2011 permanency hearing, a Hobbs police
detective testified that images found on the Everharts' computer were possibly child pornography.
(*Id.* at 7.) Based on the testimony presented at the hearing, the court ordered all contact between
the Everharts and their two youngest children be ceased. (*Id.*) The following month, the court
continued its no-contact order. (*Id.*)

In September 2011, CYFD filed a motion to terminate the Everharts' parental rights. (*See
id.* at 7.) Several months later, the court ordered the permanency plan continue as adoption,
extended CYFD's legal custody for an additional year, and continued the no-contact order. (*Id.* at
8.) By February 2013, however, CYFD changed the permancy plan to reunification. (*Id.* at 9.) The
court appointed a third-party mediator to oversee the family's reunification. (*Id.*)

In December 2013, the court changed course and found that adoption was now appropriate. (*Id.* at 9.) Nearly a year and a half later, the court held a termination hearing in which 14 witnesses testified, including Defendant Dana Becker. (*Id.* at 10.) The court issued its decision in July 2015, finding the Everharts had abused and neglected S.E. Boy and S.E. Girl and terminating the Everharts' parental rights to S.E. Girl. (*Id.* at 11–12.)

The Everharts appealed the district court's termination order. (*See id.* at 12.) The New Mexico Court of Appeals reversed the Fifth Judicial District Court's decision and remanded the case for a custody determination based on S.E. Girl's best interests. (*Id.* at 13.) In April 2018, the district court held a two-day hearing to determine custody of S.E. Girl. (*Id.* at 13.) The court then ordered, based on S.E. Girl's best interests, that she remain in the custody of CYFD and in the placement of her foster family. (*Id.*)

The Everharts again appealed the district court's termination order. (*Id.* at 14.) In December 2019, the New Mexico Court of Appeals affirmed the district court's decision. (*Id.*) The Everharts appealed the Court of Appeals' judgment to the New Mexico Supreme Court. (*Id.*) On March 31, 2020, after the Chief Magistrate Judge entered her PFRD, the New Mexico Supreme Court denied the Everharts' Petition for Certiorari, ending the ten-year custody battle in state court. (*See* Doc. 158-1.)

In the midst of the state-court litigation, the Everharts filed their Complaint before this Court, alleging procedural and substantive constitutional violations against several State and County officials. (Doc. 1.) The Everharts alleged, in pertinent part, that the withholding of their children violated their constitutional rights under the United States and New Mexico Constitutions. (*Id.* at 1–23.) On October 8, 2019, the Everharts filed their Motion for Issue Preclusion (Doc. 132), and shortly thereafter, Defendants filed their Motion for Summary Judgment (Doc. 144).

In their Motion for Issue Preclusion, the Everharts argued Defendants should be foreclosed from contesting several factual determinations found by the New Mexico state courts under the doctrine of issue preclusion. (Doc. 132 at 1–14.) In their Motion for Summary Judgment, Defendants set forth five arguments in favor of the Court rendering summary judgment on their behalf. (Doc. 144.) These arguments included (1) application of the Rooker-Feldman doctrine; (2) claim and issue preclusion; (3) qualified immunity; (4) failure to establish a "policy or custom" as required by 42 U.S.C. § 1983; and (5) the Everharts' lack of standing. (*Id.* at 12–14.) Both the Everharts' Motion for Issue Preclusion and Defendants' Motion for Summary Judgment were evaluated by the Chief Magistrate Judge, who rendered factual findings, conducted legal analysis, and recommended an ultimate disposition. (*See* Docs. 147; 154.)

In support of her recommendation that the Everharts' Motion for Issue Preclusion be denied, Judge Garza explained that the Everharts failed to show the underlying "issue was necessarily determined" and "the parties in the current action are the same or were in privity with the parties in the prior action." (Doc. 154 at 17.) Similarly, Judge Garza recommended dismissal of Defendants' first three arguments for summary judgment: application of the Rooker-Feldman doctrine, claim preclusion, and issue preclusion, because "the state court ligitation Defendants rely on has not achieved a final judgment" because of the pending writ of certiorari before the New Mexico Supreme Court. (*Id.* at 15–16.) Judge Garza recommended that both the individual defendants and CYFD be awarded summary judgment. (*Id.* at 19–34.) The Everharts timely objected to the Chief Magistrate Judge's PFRD. (Doc. 157.)

## II.    Legal Standard

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has

properly objected. 28 U.S.C. § 636(b)(1)(C). Filing objections that address the primary issues in the case "advances the interests that underlie the Magistrate's Act, including judicial efficiency." *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996). Objections must be timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *Id.* at 1060. Additionally, issues "raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

## III.   Analysis

The Everharts contest nearly all of the PFRD's conclusions. (*See* Doc. 157 at 3–14.) Indeed, the Everharts even object to conclusions that resulted in a finding in their favor—including denial of Defendants' argument for application of the Rooker-Feldman doctrine. (*Id.* at 3.) The Everharts also reiterate their argument in favor of granting their Motion for Issue Preclusion. (*Id.* at 3–4.) Finally, the Everharts object to the recommendation that Ms. Becker is entitled to qualified immunity, and that no colorable claim exists against Defendant CYFD. (*Id.* at 4–12.) In response, Defendants contend that none of the objections have merit, and the absence of "clear specificity" in the objections permits the Court to review the PFRD for "clear error," rather than conducting a *de novo* review. (Doc. 158 at 6 (citing *United States v. One Parcel of Real Property*, 73 F.3d 1057 (10th Cir. 1996)).) After noting Defendants' suggested lower standard of review, the Court will evaluate the record *de novo*.

Notably, the Everharts have not objected to Judge Garza's recommendation that Defendant Evgenia Valderaz be dismissed with prejudice. (*See generally* Doc. 157.) As such, the

5

recommendation to grant qualified immunity to Ms. Valderaz is deemed adopted without objection, and the Court dismisses Ms. Valderaz from this action with prejudice.

### a. Factual Objections

The Everharts proffer two objections to the Chief Magistrate Judge's recitation of the undisuted material facts governing this case. (*See* Doc. 157 at 2–3.) First, they argue Judge Garza should have adopted the facts as set forth in their Motion for Issue Preclusion. (*Id.* at 2.) Second, they contend the procedural history following the Court of Appeals's 2017 reversal order is irrelevant. (*Id.* at 3.) Defendants assert that these factual objections fail on both substantive and procedural grounds. (Doc. 158 at 7–8.) The Court will address each of the Everharts' objections to the Chief Magistrate Judge's factual recitation in turn.

The Everharts first argue "the Court should adopt the facts as provided in [the] Motion for Issue Preclusion." (Doc. 157 at 2.) As explained by Judge Garza, the Everharts' recitation of the facts cannot be adopted for at least two reasons. (*See* Doc. 154 at 3–4.) First, the Everharts failed to provide any record citations or authority in support of their factual recitation in violation of Local Rule 56.1(b). (*See id.* at 4.) Second, the Everharts ignored the mandate to indicate whether their facts were disputed. (*Id.*)

Now, in their Objections, the Everharts do not seek to rectify any of the procedural deficiencies the PFRD identified that plagued their original factual recitation. Instead, they merely repeat the same unsupported contentions, absent record citations and adherence to the Local Rules. (*See* Doc. 157 at 2.) As such, for substantially the same reasons as explained by Judge Garza, the Everharts' bald request for the Court to adopt their version of the facts is denied.

Next, the Everharts contend the procedural posture of this case post-dating the Court of Appeals' 2017 reversal order is irrelevant. (*Id.* at 3.) As a preliminary matter, the Everharts did not

raise this contention in their Motion for Issue Preclusion or in their response to Defendants' Motion for Summary Judgment. *See Marshall*, 75 F.3d at 1426 (explaining issues "raised for the first time in objections to the magistrate judge's recommendation are deemed waived."). In addition, the Everharts repeatedly cite the subsequent procedural history when it helps bolster their argument. (*See* Doc. 146 at 2 (citing the "Court of Appeals Decision of December 27, 2019" for the proposition that "the [c]ourt recognized [] the biological parents have fundamental rights")).)

Notwithstanding the Everharts' apparent waiver of this argument or their repeated reliance on the facts they deem immaterial, the procedural posture of this case is indisputably relevant. Indeed, several of the parties' arguments hinge on the very question of state-court exhaustion: including, for example, the Everharts' entire *Motion for Issue Preclusion*. For each of these reasons, the Everharts' relevancy objection is similarly denied.

### b. Legal Objections

The Everharts object to six of the Chief Magistrate Judge's recommended legal conclusions: (1) the application of the Rooker-Feldman doctrine; (2) their Motion for Issue Preclusion; (3) the familial association claims; (4) the procedural due process claims; (5) the Fourth Amendment search and seizure claims; and (6) the municipial liability claim against CYFD. (Doc. 157 at 5–13.) In response, Defendants contend that none of the Everharts' legal objections adequately rebut the recommended conclusions. (*See* Doc. 158 at 8–13.)

### i. *The Rooker-Feldman Doctrine*

First, the Everharts object to the recommendation that Defendants' Rooker-Feldman argument be denied. (Doc. 157 at 3.) As grounds for their objection, they advance the same argument they did in response to Defendants' motion on this issue—"that the New Mexico State Courts did not adjudicate the Plaintiffs['] claims of a violation of due process, substantive due

process, familiar [sic] association, and illegal search and seizure." (*Id.*; *see also* Docs. 146 at 8–9; 154 at 15.) This objection does not specifically respond to Judge Garza's reasoning or offer legal authority to overrule the PFRD.[1] As such, the Court adopts Judge Garza's recommendation and overrules the Everharts' objection.

       *ii.*   <u>The Motion for Issue Preclusion</u>

      Next, the Everharts contend Judge Garza erred in recommending denial of their Motion for Issue Preclusion. (Doc. 157 at 3–4.) Specifically, the Everharts argue the Chief Magistrate Judge erroneously concluded that the underlying state litigation was not "necessarily determined." (*Id.* at 4.) In response, Defendants allege the Everharts "fail to articulate any comprehensible arguments as to why Judge Garza's analysis was incorrect." (Doc. 158 at 9.)

      Judge Garza recommended denial of the Everharts' Motion for Issue Preclusion for two reasons. (Doc. 154 at 16–17.) First, she explained the Everharts' motion fails because there was no evidence that "the underlying state litigation result[ed] in a final judgment." (*Id.*) Second, she explained that the Everharts failed to demonstrate "the parties in the current action are the same or were in privity with the parties in the prior action." (*Id.*) To successfully apply the doctrine of issue preclusion, the moving party must establish that each of these elements is satisfied. (*Id.*)

      The Everharts object to the Chief Magistrate Judge's conclusion that the underlying state-court litigation had not yet reached a final judgment. (Doc. 157 at 3–4.) However, to successfully preclude an issue, the Everharts must demonstrate that *both* the underlying state litigation was final *and* the parties in the two actions are the same. (*See* Doc. 154 at 17.) As such, even if the Court agreed with the Everharts' objection—that the underlying litigation was final—their claim for issue preclusion still fails to satisfy all the necessary elements. *See City of Sunland Park v. Macias*,

---

[1] The Court also notes that neither party addressed the fact that the New Mexico Supreme Court denied the Everharts' Petition for Certiorari after Judge Garza filed the PFRD. (*See* Docs. 157; 158; 8-1.)

75 P.3d 816, 820 (N.M. Ct. App. 2003) (explaining that for issue preclusion to apply, the movant must satisfy four elements, including "the parties in the underlying action were the same or in privity to one another," and the "issue was necessarily determined"). Thus the Court adopts Judge Garza's recommendation and overrules the Everharts' objection.

### iii.   _Qualified Immunity_

The Everharts next object to the recommendation that qualified immunity be granted for Ms. Becker on their claims for violations of the right to familial association, the right to procedural due process, and the Fourth Amendment right to be free from unlawful search and seizure. (Doc. 157 at 4–12.) In response, Defendants contend the Everharts have failed to proffer "any evidence" to support their arguments against the application of qualified immunity. (Doc. 158 at 11.) Furthermore, Defendants allege no genuine dispute of material fact remains that would foreclose summary judgment in their favor. (_Id._ at 12–13.)

#### a.   _Right to Familial Association Claims_

The Everharts present three objections to the PFRD's recommendation to grant qualified immunity to Ms. Becker. (Doc. 157 at 5–7.) First, they object to the proposition that they "have not alleged a level of specifity required of the circumstances nor have they supported the particularized allegations." (_Id._ at 6.) Second, they argue Ms. Becker was "aware" that her conduct was unconstitutional, thus arising to more than "mere negligence" as found by Judge Garza. (_Id._) Finally, they object to Judge Garza's conclusion that they failed to provide case law to rebut the defense of qualified immunity. (_Id._ at 5.)

The Everharts' first objection fails to raise a colorable argument to contradict the PFRD's legal analysis. Indeed, rather than specify the allegations the PFRD deemed insufficient, the Everharts merely restate the same bald assertions and cite the same case law the Chief Magistrate

Appellate Case: 20-2078   Document: 010110518512   Date Filed: 05/06/2021   Page: 87

Judge already analyzed and found unpersuasive. (*See* Doc. 157 at 6.) Judge Garza's recitation of

the law was correct, and the Everharts' current contention that their initial argument was specific

enough to withstand judicial review is wholly unsupported. *See Adams v. Jones*, No. Civ. 10-920-

F, 2012 WL 1564726, at *1 (W.D. Okla. May 3, 2012) (explaining objections to a report and

recommendation are not an opportunity for a "second bite at the apple").

      Second, the Everharts contend Ms. Becker "was aware as set forth in her deposition

testimony that she was at fault" for the children's separation from their parents. (Doc. 157 at 7.)

Yet Judge Garza already analyzed Ms. Becker's deposition testimony, set forth the requisite legal

threshold the Everharts had to overcome, and explained why Ms. Becker's conduct did not amount

to a violation of a clearly established right. (Doc. 154 at 22–25.) The Everharts have not presented

any evidence, nor have they cited any case law, that casts doubt on the PFRD's conclusion. As

such, their assertion that Ms. Becker's conduct amounts to a constitutional violation remains

unsubstantiated.

      Finally, the Everharts contend the lack of case law demonstrating Ms. Becker violated their

constitutional rights is irrelevant, because her conduct was "so egregious that it shocks the

conscience . . . ." (Doc. 157 at 6.) The Everharts argue that an individual in Ms. Becker's position

would have understood what she was doing was unconstitutional, even absent controlling law

explicitly outlawing her conduct. (*Id.*) However, as articulated by the Chief Magistrate Judge, "[the

Everharts] have failed to present any factual evidence from the record to substantiate their

allegation that Defendants intentionally directed conduct to damage the familial relationship."

(Doc. 154 at 24.) In their Objections, the Everharts have similarly failed to specify what evidence

supports their contention that Ms. Becker's conduct was so egregious that an individual in her

position would have understood her behavior was unconstitutional. As such, the Court adopts Judge's Garza's recommendation on this issue and overrules the Everharts' objections.

### b. Right to Procedural Due Process Claims

Next, the Everharts allege Judge Garza erred in concluding they did not satisfy the standard for demonstrating a procedural due process violation. (Doc. 157 at 8.) Specifically, they contend Ms. Becker was more than "simply negligent" when failing to reunify the children with their family. (*Id.* at 8.) Rather, they allege that Ms. Becker's conduct constituted a "conscious disregard or indifference" for their procedural due process rights. (*Id.* at 9.) In support, the Everharts cite to Ms. Becker's testimony, where "she admitted that she and CYFD were partly at fault for the disintegration of the parent/child relationship." (*Id.*)

In the PFRD, the Chief Magistrate Judge cited and discussed Ms. Becker's deposition testimony. (Doc. 154 at 28.) Judge Garza concluded that even when "viewing the facts in the light most favorable to Plaintiffs, . . . simple negligence or passivity is insufficient to defeat qualified immunity on a procedural due process claim." *Id.* (citing *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011) (explaining more than simple negligence is needed to demonstrate a violation of a plaintiff's procedural due process right)).) The Everharts do not point to any evidence that Ms. Becker's testimony, which was already analyzed in the PFRD, demonstrates anything more than negligence. As such, the Court adopts the recommendation and overrules the Everharts' objections.

### c. Fourth Amendment Search and Seizure claim

Next, the Everharts disagree with the recommendation that Defendants are entitled to qualified immunity on the Fourth Amendment search and seizure claims. (Doc. 157 at 11.) In the PFRD, Judge Garza explained that the Everharts' Fourth Amendment claims fail because the children's seizure was authorized pursuant to court order. (Doc. 154 at 29–32.) Further, based on

the information available to the state court at the time, the orders to withhold the Everharts'

children were reasonable. (*Id.* at 32.) The Everharts contend that Defendants knowingly gave false

or inaccurate information to the state court, but they fail to offer any evidence to support this

allegation. (*See* Doc. 157 at 11.) Moreover, they do not contend that Judge Garza misapplied or

misstated the applicable Fourth Amendment law. (*See id.*) Absent any evidentiary support for their

allegations, or any argument contesting the Chief Magistrate Judge's legal recitation, the

Everharts' objection is properly overruled.

> *iv.* *Municipal Liability claim*

Finally, the Everharts object to the recommendation that they failed to establish a claim for

municipal liability against CYFD. (*Id.* at 12.) Specifically, they contend that "[t]he policy was

clear[:] . . . keep the minor children away from them, until we can find someone to adopt!" (*Id.*)

The Everharts allege this policy directly caused their constitutional deprivation, and CYFD is

therefore not entitled to qualified immunity. (*Id.*) As Judge Garza noted, however, the Everharts'

statement lacks support in the record. (*See* Doc. 154 at 33–34.) Accordingly, the Court overrules

the objection and adopts Judge Garza's recommendation.

## IV.     Conclusion

For the foregoing reasons, the Court finds the Chief Magistrate Judge correctly

recommended that the Everharts failed to establish application of issue preclusion. Furthmore, the

Court finds Judge Garza conducted the proper analysis and correctly concluded Ms. Becker is

entitled to qualified immunity and no colorable claim for municipal liability can be attributed to

CYFD. Therefore, the Everharts' Objections are overruled.

**IT IS THEREFORE ORDERED** that the Everharts' Motion for Issue Preclusion (Doc.

132) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 144) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants CYFD, Dana Becker, and Evgenia Valderaz are therefore **DISMISSED** from this action **WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that this lawsuit shall remain open pending final resolution of settlement between the Everharts and the City Defendants.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE